# LANGLEY ET UX. *v.* FEDERAL DEPOSIT INSURANCE CORPORATION

No. 86–489.   Argued October 14, 1987—Decided December 1, 1987

Scalia, J., delivered the opinion for a unanimous Court.

*William C. Shockey* argued the cause and filed a brief for petitioners.

*Richard G. Taranto* argued the cause for respondent. With him on the brief were *Solicitor General Fried, Deputy*

*Solictor General Wallace, John C. Murphy, Jr.,* and *Ann S. DuRoss.*

JUSTICE SCALIA delivered the opinion of the Court.

Petitioners W. T. and Maryanne Grimes Langley seek reversal of a decision by the United States Court of Appeals for the Fifth Circuit granting the Federal Deposit Insurance Corporation (FDIC) summary judgment on its claim for payment of a promissory note signed by petitioners. 792 F. 2d 541 (1986). The Fifth Circuit rejected petitioners' contention that a defense of misrepresentation of existing facts is not barred by 12 U. S. C. § 1823(e) because such a representation is not an "agreement" under that section. We granted certiorari to resolve a conflict in the Courts of Appeals. 479 U. S. 1028 (1987). Compare *Gunter* v. *Hutcheson,* 674 F. 2d 862, 867 (CA11), cert. denied, 459 U. S. 826 (1982); *FDIC* v. *Hatmaker,* 756 F. 2d 34, 37 (CA6 1985) (dictum).

I

The Langleys purchased land in Pointe Coupee Parish, Louisiana, in 1980. To finance the purchase, they borrowed $450,000 from Planters Trust & Savings Bank of Opelousas, Louisiana, a bank insured by the FDIC. In consideration for the loan, they executed a note, a collateral mortgage, and personal guarantees. The note was renewed several times, the last renewal being in March 1982, for the principal amount of $468,124.41.

In October 1983, after the Langleys had failed to pay the first installment due on the last renewal of the note, Planters brought the present suit for principal and interest in a Louisiana state trial court. The Langleys removed the suit, on grounds of diversity, to the United States District Court for the Middle District of Louisiana, where it was consolidated with a suit by the Langleys seeking more than $5 million in damages from Planters and others. The Langleys alleged as one of the grounds of complaint in their own suit, and as a defense against Planters' claim in the present suit, that the

1980 land purchase and the notes had been procured by misrepresentations. In particular, they alleged that the notes had been procured by the bank's misrepresentations that the property conveyed in the land purchase consisted of 1,628.4 acres, when in fact it consisted of only 1,522, that the property included 400 mineral acres, when in fact it contained only 75, and that there were no outstanding mineral leases on the property, when in fact there were.[1] No reference to these representations appears in the documents executed by the Langleys, in the bank's records, or in the minutes of the bank's board of directors or loan committee.

In April 1984, the FDIC conducted an examination of Planters during which it learned of the substance of the lawsuits with the Langleys, including the allegations of Planters' misrepresentations. On May 18, 1984, the Commissioner of Financial Institutions for the State of Louisiana closed Planters because of its unsound condition and appointed the FDIC as receiver. The FDIC thereupon undertook the financing of a purchase and assumption transaction pursuant to 12 U. S. C. § 1823(c)(2), in which all the deposit liabilities and most of the assets of Planters were assumed by another FDIC-insured bank in the community. Because the amount of the liabilities greatly exceeded the value of the assets, the FDIC paid the assuming bank $36,992,000, in consideration for which the FDIC received, *inter alia*, the Langleys' March 1982 note.

In October 1984, the FDIC was substituted as a plaintiff in this lawsuit, and moved for summary judgment on its claim. The District Court granted the motion, 615 F. Supp. 749

---

[1] The Langleys also alleged certain other misrepresentations by Planters, including that the Langleys would have no personal liability on the notes, that Planters would provide another purchaser for the land as soon as the sale to the Langleys was closed, and that no payments would be due until the property was resold. The Langleys concede that 12 U. S. C. § 1823(e) bars these other misrepresentations from being asserted as defenses to FDIC's suit on the note because they were promissory in nature. Brief for Petitioners 12.

(WD La. 1985), and was sustained on appeal. The Fifth Circuit held that the word "agreement" in 12 U. S. C. § 1823(e) encompassed the kinds of material terms or warranties asserted by the Langleys in their misrepresentation defenses and, because the requirements of § 1823(e) were not met, those defenses were barred. 792 F. 2d, at 545–546. We granted the Langleys' petition for certiorari on the issue whether, in an action brought by the FDIC in its corporate capacity for payment of a note, § 1823(e) bars the defense that the note was procured by fraud in the inducement even when the fraud did not take the form of an express promise.

## II

The Federal Deposit Insurance Act of 1950, § 13(e), 64 Stat. 889, as amended, 12 U. S. C. § 1823(e), provides:

> "No agreement which tends to diminish or defeat the right, title or interest of the Corporation [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank."

## A

Petitioners' principal contention is that the word "agreement" in the foregoing provision encompasses only an express promise to perform an act in the future. We do not agree.

As a matter of contractual analysis, the essence of petitioners' defense against the note is that the bank made cer-

tain warranties regarding the land, the truthfulness of which was a condition to performance of their obligation to repay the loan.   See 1 A. Corbin, Contracts § 14, p. 31 (1963) ("[T]ruth [of the warranty] is a condition precedent to the duty of the other party"); accord, 5 S. Williston, Contracts § 673, pp. 168–171 (3d ed. 1961); J. Murray, Contracts § 136, pp. 275–276 (2d rev. ed. 1974).   As used in commercial and contract law, the term "agreement" often has "a wider meaning than . . . promise," Restatement (Second) of Contracts § 3, Comment $a$ (1981), and embraces such a condition upon performance.   The Uniform Commercial Code, for example, defines agreement as "the bargain of the parties in fact as found in their language or by implication from other circumstances . . . ."   U. C. C. § 1–201(3), 1 U. L. A. 44 (1976). Quite obviously, the parties' bargain cannot be reflected without including the conditions upon their performance, one of the two principal elements of which contracts are constructed.   Cf. E. Farnsworth, Contracts § 8.2, p. 537 (1982) ("[P]romises, which impose duties, and conditions, which make duties conditional, are the main components of agreements").   It seems to us that this common meaning of the word "agreement" must be assigned to its usage in § 1823(e) if that section is to fulfill its intended purposes.

One purpose of § 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets.   Such evaluations are necessary when a bank is examined for fiscal soundness by state or federal authorities, see 12 U. S. C. §§ 1817(a)(2), 1820(b), and when the FDIC is deciding whether to liquidate a failed bank, see § 1821(d), or to provide financing for purchase of its assets (and assumption of its liabilities) by another bank, see §§ 1823(c)(2), (c)(4)(A).   The last kind of evaluation, in particular, must be made "with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services." *Gunter* v. *Hutcheson,* 674 F. 2d, at 865.   Neither the FDIC nor

state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions.

A second purpose of § 1823(e) is implicit in its requirement that the "agreement" not merely be on file in the bank's records at the time of an examination, but also have been executed and become a bank record "contemporaneously" with the making of the note and have been approved by officially recorded action of the bank's board or loan committee. These latter requirements ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure. Neither purpose can be adequately fulfilled if an element of a loan agreement so fundamental as a condition upon the obligation to repay is excluded from the meaning of "agreement."

That "agreement" in § 1823(e) covers more than promises to perform acts in the future is confirmed by examination of the leading case in this area prior to enactment of § 1823(e) in 1950. In *D'Oench, Duhme & Co.* v. *FDIC*, 315 U. S. 447 (1942), the FDIC acquired a note in a purchase and assumption transaction. The maker asserted a defense of failure of consideration (that is, the failure to perform a promise that was a condition precedent to the maker's performance), based on an undisclosed agreement between it and the failed bank that the note would not be called for payment. The Court held that this "secret agreement" could not be a defense to suit by the FDIC because it would tend to deceive the banking authorities. *Id.*, at 460. The Court stated that when the maker "lent himself to a *scheme or arrangement* whereby the banking authority . . . was likely to be misled," that scheme or arrangement could not be the basis for a defense against the FDIC. *Ibid.* (emphasis added). We can safely assume that Congress did not mean "agreement" in § 1823(e) to be interpreted so much more narrowly than its

permissible meaning as to disserve the principle of the leading case applying that term to FDIC-acquired notes. Certainly, one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities, whether the condition consists of performance of a counterpromise (as in *D'Oench, Duhme*) or of the truthfulness of a warranted fact.

## B

Petitioners' fallback position is that even if a misrepresentation concerning an existing fact can sometimes constitute an agreement covered by § 1823(e), it at least does not do so when the misrepresentation was fraudulent and the FDIC had knowledge of the asserted defense at the time it acquired the note. We conclude, however, that neither fraud in the inducement nor knowledge by the FDIC is relevant to the section's application.

No conceivable reading of the word "agreement" in § 1823(e) could cause it to cover a representation or warranty that is bona fide but to exclude one that is fraudulent. Petitioners effectively acknowledge this when they concede that the fraudulent nature of a *promise* would not cause it to lose its status as an "agreement." See *supra*, at 89, n. 1. The presence of fraud could be relevant, however, to another requirement of § 1823(e), namely, the requirement that the agreement in question "ten[d] to diminish or defeat the right, title or interest" of the FDIC in the asset.

Respondent conceded at oral argument that the real defense of fraud in the factum—that is, the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents, see U. C. C. § 3–305(2)(c), Comment 7, 2 U. L. A. 241 (1977)—would take the instrument out of § 1823(e), because it would render the instrument entirely void, see Restatement (Second) of Contracts § 163 and Comments *a, c;* Farnsworth § 4.10, at 235, thus leaving

no "right, title or interest" that could be "diminish[ed] or defeat[ed]." See Tr. of Oral Arg. 24–25, 27–30. Petitioners have never contended, however, nor could they have successfully, that the alleged misrepresentations about acreage or mineral interests constituted fraud in the factum. It is clear that they would constitute only fraud in the inducement, which renders the note voidable but not void. See U. C. C. § 3–201(1), 2 U. L. A. 127; Restatement (Second) of Contracts § 163, Comment *c;* Farnsworth § 4.10, at 235–236. The bank therefore had and could transfer to the FDIC voidable title, which is enough to constitute "title *or* interest" in the note. This conclusion is not only textually compelled, but produces the only result in accord with the purposes of the statute. If voidable title were not an "interest" under § 1823(e), the FDIC would be subject not only to undisclosed fraud defenses but also to a wide range of other undisclosed defenses that make a contract voidable, such as certain kinds of mistakes and innocent but material misrepresentations. See Restatement (Second) of Contracts §§ 152–153, 164.

Finally, knowledge of the misrepresentation by the FDIC prior to its acquisition of the note is not relevant to whether § 1823(e) applies. Nothing in the text would support the suggestion that it is: An agreement is an agreement whether or not the FDIC knows of it; and a voidable interest is transferable whether or not the transferee knows of the misrepresentation or fraud that produces the voidability. See Farnsworth § 11.8, at 780–781; cf. U. C. C. § 3–201(1), 2 U. L. A. 127. Petitioners are really urging us to engraft an equitable exception upon the plain terms of the statute. Even if we had the power to do so, the equities petitioners invoke are not the equities the statute regards as predominant. While the borrower who has relied upon an erroneous or even fraudulent unrecorded representation has some claim to consideration, so do those who are harmed by his failure to protect himself by assuring that his agreement is approved and recorded in accordance with the statute. Harm to the

FDIC (and those who rely upon the solvency of its fund) is not avoided by knowledge at the time of acquiring the note. The FDIC is an insurer of the bank, and is liable for the depositors' insured losses whether or not it decides to acquire the note. Cf. 12 U. S. C. § 1821(f). The harm to the FDIC caused by the failure to record occurs no later than the time at which it conducts its first bank examination that is unable to detect the unrecorded agreement and to prompt the invocation of available protective measures, including termination of the bank's deposit insurance. See § 1818 (1982 ed. and Supp. IV). Thus, insofar as the recording provision is concerned, the state of the FDIC's knowledge at that time is what is crucial. But as we discussed earlier, see *supra*, at 92, § 1823(e) is meant to ensure more than just the FDIC's ability to rely on bank records at the time of an examination or acquisition. The statutory requirements that an agreement be approved by the bank's board or loan committee and filed contemporaneously in the bank's records assure prudent consideration of the loan before it is made, and protect against collusive reconstruction of loan terms by bank officials and borrowers (whose interests may well coincide when a bank is about to fail). Knowledge by the FDIC could substitute for the latter protection only if it existed at the very moment the agreement was concluded, and could substitute for the former assurance not at all.

The short of the matter is that Congress opted for the certainty of the requirements set forth in § 1823(e). An agreement that meets them prevails even if the FDIC did not know of it; and an agreement that does not meet them fails even if the FDIC knew. It would be rewriting the statute to hold otherwise. Such a categorical recording scheme is of course not unusual. Under Article 9 of the U. C. C., for example, a filing secured creditor prevails even over those unrecorded security interests of which he was aware. See, *e. g., Rockwell Int'l Credit Corp.* v. *Valley Bank,* 109 Idaho 406, 408–409, 707 P. 2d 517, 519–520 (Ct. App. 1985); *Bloom*

v. *Hilty,* 427 Pa. 463, 471, 234 A. 2d 860, 863–864 (1967); 9 R. Anderson, Uniform Commercial Code § 9–312:74, p. 298 (3d ed. 1985); J. White & R. Summers, Uniform Commercial Code § 25–4, p. 1037 (2d ed. 1980).

* * *

A condition to payment of a note, including the truth of an express warranty, is part of the "agreement" to which the writing, approval, and filing requirements of 12 U. S. C. § 1823(e) attach. Because the representations alleged by petitioners constitute such a condition and did not meet the requirements of the statute, they cannot be asserted as defenses here. The judgment of the Court of Appeals is

*Affirmed.*