No. 61,008

Federal Deposit Insurance Corporation, in its corporate capacity, *Appellee,* v. G. R. Addleman, *Appellant,* and Paul L. Stephens, Laura Stephens, Doug McEntarfer, and Janet McEntarfer, *Defendants.*

(750 P.2d 1037)

Opinion filed February 19, 1988.

*Steven W. Hirsch,* of Morgan Law Office, of Oberlin, argued the cause and *Stan Morgan,* of the same firm, was with him on the briefs for appellant.

*E. Whitney Drake,* special counsel, Office of General Counsel, Federal Deposit Insurance Corporation, of Washington, D.C., argued the cause and *Ann S. DuRoss,* assistant general counsel, of the same office, and *Dee F. Marsh,* staff

attorney, Federal Deposit Insurance Corporation, of Wichita, were with him on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: The Federal Deposit Insurance Corporation (FDIC) filed an action to enforce a guaranty contract against G. R. Addleman. The district court of Decatur County granted the FDIC's motion for summary judgment and found Addleman liable on the guaranty. The district court held a guarantor under a written guaranty of debt to a failed bank may not assert an oral accord and satisfaction as a defense to liability when the FDIC has acquired the guaranty pursuant to 12 U.S.C. § 1823 (1982). Addleman appeals.

Addleman was a co-owner of Great Plains Office Supply, Inc., a business located in Oberlin, Kansas. On September 22, 1981, Addleman executed a written guaranty in favor of the Decatur County National Bank (DCNB), to the limit of $15,000, guaranteeing the indebtedness of Great Plains Office Supply, Inc. In January of 1983, Addleman sold his interest in the company to other individuals. DCNB was not party to the stock purchase agreement or to the addendum in which the purchasers agreed Addleman was to be released from all guaranties of the corporation debt. Neither document was part of DCNB's records. The record shows no consideration running from Addleman to DCNB from the sale of the business. A "Discount Committee Loan Memorandum" dated January 27, 1983, and signed by bank officer Gayle Cook stated:

"G. R. Addleman has sold out and the business has been taken over by Wayne Wilcoxson (net worth $141,500.00), Doug McEnterfar (net worth $134,430.00) and Paul Stephens (net worth $940,500.00)—all will be guaranteeing the full loan. Great Plains will need from $50M to $70M—they are enlarging the inventory and putting in a service department. By 2-12-83, they will know exactly what they'll need and the note will be set up for a 6 month period without payments so that the business will be able to settle down and get established. Also on 2-12-83, a complete list of inventory and accounts receivable will be taken."

The "all" guaranteeing the loan could be read as including Addleman. The memorandum does *not* state that DCNB releases Addleman from his guaranty. An "Action Memorandum," a bank record, dated August 5, 1985, listed Addleman as being indebted as a guarantor of the business loan in the amount of $15,000.

Addleman nonetheless claims he was *orally* released from his obligation on the note pursuant to an accord and satisfaction with DCNB at the time the business was purchased.

On November 21, 1985, DCNB was declared insolvent. Pursuant to the National Bank Act, 12 U.S.C. §§ 191, 192, and 1821(c) (1982), the Comptroller of the Treasury ordered the bank closed, took possession of the bank's assets and appointed the FDIC as receiver. The FDIC then sold certain assets of DCNB to the assuming bank, the Bank of Oberlin, and purchased the remainder of the assets. 12 U.S.C. § 1823(c)(2). The FDIC claims the guaranty of Addleman as one of the assets purchased.

Let us first examine the legal status of the FDIC in bank failure cases. The FDIC, as an insurer of bank deposits, has as one of its primary duties the payment to depositors of a failed bank. Pursuant to 12 U.S.C. § 1823(c), the FDIC is empowered to purchase and collect assets of failed banks in order to minimize loss to the insurance fund. *Gunter v. Hutcheson,* 674 F.2d 862, 865-66 (11th Cir.), *cert. denied* 459 U.S. 826 (1982). In *D'Oench, Duhme & Co. v. F.D.I.C.,* 315 U.S. 447, 457-58, 86 L. Ed. 956, 62 S. Ct. 676 (1942), the United States Supreme Court recognized the need to protect the FDIC from agreements between an insolvent bank and debtors which would nullify or reduce the value of an asset purchased by the FDIC. The Court held such "secret agreements" could not be enforced against the FDIC.

Congress codified this policy in 12 U.S.C. § 1823(e), which provides:

"No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee and (4) shall have been, continuously, from the time of its execution, an official record of the bank."

This brings us to Addleman's issue on appeal. He contends the stock purchase agreement and the new purchasers' subsequent execution of a new note to DCNB constituted an accord and

satisfaction which extinguished the guaranty. Addleman relies principally on *Federal Deposit Ins. Corp. v. Nemecek*, 641 F. Supp. 740 (D. Kan. 1986). *Nemecek* was a case which also involved DCNB. DCNB originally brought suit against the defendants to recover on a promissory note secured by real estate. Later, the bank and the defendants agreed to a settlement whereby the bank would accept quitclaim deeds for the mortgaged property in lieu of foreclosure. After the FDIC was appointed receiver of the bank, it brought suit on the promissory note. The federal district court held that, before 12 U.S.C. § 1823(e) applies, the FDIC must have acquired the asset from the failed bank, citing *F.D.I.C. v. Merchants Nat. Bank of Mobile*, 725 F.2d 634 (11th Cir.), *cert. denied* 469 U.S. 829 (1984). The court found the note was never acquired as an asset by the FDIC because it was extinguished by the accord and satisfaction reached by DCNB and defendants when the quitclaim deeds were delivered to the bank's attorney prior to the bank's failure. 641 F. Supp. at 742-43.

Let us turn to the law of accord and satisfaction to determine whether Addleman has met its basic requirements. In *E F Hutton & Co. v. Heim*, 236 Kan. 603, 610-11, 694 P.2d 445 (1985), we stated:

"To constitute an accord and satisfaction, there must be an offer in full satisfaction of an obligation, accompanied by such acts and declarations or made under such circumstances that the party to whom the offer is made is bound to understand that if he accepts the offer, it is in full satisfaction of and discharges the original obligation. [Citation omitted.] An accord and satisfaction, as an adjustment of a disagreement as to what is due from one party to another through payment of an agreed amount, must be consummated by a meeting of the minds and accompanied by sufficient consideration."

In the absence of documents or acts directly evidencing a "meeting of the minds" between DCNB and Addleman that the guaranty contract was to be extinguished, there is no accord and satisfaction. Addleman attempts to construct an accord and satisfaction out of the following documents: (1) the stock purchase agreement and addendum relieving Addleman of liability; (2) guarantees of the new purchasers to DCNB; (3) the Discount Committee Loan Memorandum previously quoted; (4) guaranty agreements and a security agreement between the new pur-

chasers and DCNB; and (5) an affidavit executed for use in this litigation by an ex-employee of DCNB, Gayle Cook, who left the bank in November of 1983. In the affidavit, Cook states:

"It was the bank's understanding and agreement that it was necessary, in order to complete the transaction, to release the Addleman guaranty and obtain the Paul Stephens and Douglas R. McEnterfar guaranties. . . . We therefore proceeded to cancel and not rely on the G. R. Addleman guaranty as an asset of the bank upon receipt of guaranties of the new owners . . . ."

Addleman fails to include the bank record of August 1985 which lists Addleman as a guarantor for the loan in the amount of $15,000 to Great Plains. Addleman also fails to address the significant distinction between *Nemecek* and this case. In *Nemecek,* DCNB was continually a party to the agreement; here, it was not a party to the stock transfer agreement. We thus hold there is no competent evidence of a meeting of the minds to find the guaranty was extinguished by accord and satisfaction. Addleman placed the guaranty in DCNB's records and it was his duty to recover possession of the guaranty, if it was no longer valid, to prevent reliance upon it by the FDIC or other third parties.

Because we find the guaranty was not extinguished by accord and satisfaction and was thus an asset purchased by the FDIC, we must next consider whether Cook's affidavit meets the controlling requirements of 12 U.S.C. § 1823(e). According to the statute, the agreement must: (1) be in writing; (2) be executed by the failed bank; (3) be reflected in the board of director minutes or certain committee records; *and* (4) have been from the time of its execution "an official record of the bank."

As recently stated by the United States Supreme Court in *Langley v. FDIC,* 484 U.S. _____, 98 L. Ed. 2d 340, 108 S. Ct. 396 (1987), each of these requirements must be strictly met so that bank examiners may rely on the bank's records in evaluating its assets.

"Such evaluations are necessary when a bank is examined for fiscal soundness by state or federal authorities, see 12 U.S.C. §§ 1817(a)(2), 1820(b), and when the FDIC is deciding whether to liquidate a failed bank, see § 1821(d), or to provide financing for purchase of its assets (and assumption of its liabilities) by another bank, see § 1823(c)(2), (4)(A). The last kind of evaluation, in particular, must be made 'with great speed, usually overnight, in order to preserve the going concern value of the failed bank and avoid an interruption in banking services.' *Gunter v. Hutcheson,* 674 F.2d at 865. Neither the FDIC nor state banking authorities

would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions.

"A second purpose of § 1823(e) is implicit in its requirement that the 'agreement' not merely be on file in the bank's records at the time of an examination, but also have been executed and become a bank record 'contemporaneously' with the making of the note and have been approved by officially recorded action of the bank's board or loan committee. These latter requirements ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure." 484 U.S. at _____.

None of the statutory purposes would be adequately served if Addleman's position were accepted by this court. In *Federal Deposit Ins. Corp. v. P.L.M. Intern., Inc.,* 834 F.2d 248 (1st Cir. 1987), the federal district court was faced with a similar situation to the case at bar. Defendants sought to avoid liability under a guaranty note by asserting the validity of a release which did not conform to the requirements of 12 U.S.C. § 1823(e). The federal court held that, while nonconforming documents could be considered to determine whether a guaranty contract was void from the outset, they could not be considered when the FDIC sought to enforce a facially valid note and the makers defended solely on the basis of a separate agreement.

Here, Addleman similarly seeks to avoid liability by asking us to accept documents which do not conform to the statutory requirements. This we cannot do for the reasons stated in *Langley;* it would be an invitation to fraud and collusion.

We hold the district court did not err in granting summary judgment. Summary judgment is proper when, despite giving the benefit of all inferences from the facts to the party against whom judgment is sought, the district court finds no genuine issue of fact remains. Summary judgment will be sustained by this court when, after reading the record in the light most favorable to the appellant, we, too, find no remaining issue of fact. See *Hunt v. Dresie,* 241 Kan. 647, 652-53, 740 P.2d 1046 (1987).

The judgment of the district court is affirmed.