PER CURIAM.
Intervenor-appellee, Federal Savings & Loan Insurance Corporation (FSLIC), as receiver of Mainland Savings Association (Mainland), assumed this action seeking judgment on a promissory note for $1,700,-000 executed by defendants-appellants, Riverfront Associates (Riverfront) and its *956 guarantors. Riverfront claimed a setoff based on Mainland’s intentional fraud, gross negligence, reckless conduct, breach of an agreement to fund, and breach of the implied covenant of contractual fair dealing. According to Riverfront, Mainland reneged on its promise to fund a second loan in an amount sufficient to pay the first loan and provide for the construction of improvements upon certain real property. Relying on D’Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the district court rejected Riverfront’s position and granted FSLIC summary judgment. Riverfront appeals. We affirm.
In D’Oench, 315 U.S. at 456-62, 62 S.Ct. at 678-82, the Supreme Court established that the debtor’s signing of a facially unqualified note subject to an unwritten and unrecorded condition constitutes an arrangement which is likely to mislead federal insurers in contravention of the policy to protect them in their evaluation of financial institutions. Recently, in Langley v. Federal Deposit Ins. Corp., 484 U.S. 86, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987), the Court reaffirmed D’Oench: “Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions.” In Langley, the principle issue was the meaning of the word “agreement” in 12 U.S.C. § 1823(e)[1]. Although that statute, which codifies the principles established in D’Oench, by its terms applies only to the FDIC, the D’Oench doctrine survives as an independent basis for protecting the FSLIC from undisclosed agreements. E.g., Firstsouth F.A. v. Aqua Constr., Inc., 858 F.2d 441, 442-43 (8th Cir.1988) (§ 1823(e) used by analogy to protect the FSLIC); Federal Savings & Loan Ins. Corp. v. Murray, 853 F.2d 1251, 1254 (5th Cir.1988) (while neither Congress nor the Supreme Court has extended § 1823(e) to the FSLIC, no good reason exists for treating the FDIC and FSLIC differently); Andrew D. Taylor Trust v. Security Trust Fed. Savings and Loan Ass’n, Inc., 844 F.2d 337, 342 (6th Cir.1988) (D’Oench and its progeny protect the FDIC and FSLIC alike against arrangements “likely to deceive a federal regulatory authority”). Consequently, the defenses which may be asserted against federal banking authorities seeking to collect assets of insolvent financial institutions are limited.
Riverfront does not contest the principles established in D’Oench and Langley, but instead argues that Mainland’s promise to fund a second loan is memorialized in writings contemporaneous to the original loan agreement and contained in the failed lender’s books and records. We disagree. Nothing in the note, accompanying security agreements or other documents pertaining to the transaction evidences any type of conditional promise or side agreement on the part of Mainland of which the FSLIC might have been aware. Any injury Riverfront sustained in relying on the purported oral representations of Mainland regarding a second loan is insufficient to outweigh the potential harm to the FSLIC in this and other cases if Riverfront were permitted to assert its affirmative defenses. See Langley, 108 S.Ct. at 402-03.
Accordingly, the judgment of the district court is AFFIRMED.

. § 1823(e) states in its entirety:
Agreements against interest of Corporation. No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under the section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.