DANAHY, Judge.
The trial court in this mortgage foreclosure suit entered final judgments in favor of the mortgagee, City Federal Savings Bank f/k/a City Federal Savings & Loan Association, a federally chartered savings bank with an office in Boca Raton, Florida (City Federal). During the pendency of this appeal, the Office of Thrift Supervision, Department of the Treasury, declared City Federal insolvent and appointed Resolution Trust Corporation as its receiver for the purpose of liquidation. We have concluded that our disposition of this appeal requires us to consider the consequences of that event under the provisions of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101-73, 103 Stat. 183 (1989). There are no issues of fact concerning the receiver’s status which require determination.
For purposes of this opinion, we will recite the facts of this case as alleged by the appellant. The scenario here involved the construction of a hotel in Pinellas County. The appellant (the contractor) was the owner of the property on which the hotel was to be constructed. It entered into a contract with North Redington Beach Associates Limited (the owner) calling for the purchase of the property by the owner and the engagement of the contractor as general contractor for the construction of the hotel.
Construction financing was required. Accordingly, the owner applied for an acquisition and construction loan from City Federal. For purposes of closing that loan, the contractor delivered its executed deed to its agent with instructions that the deed should not be released until the receipt of a “set aside letter” from City Federal confirming that the loan had closed, that the contractor was approved as the general contractor, and that City Federal would set aside funds in the amount of $4,722,882 for payment to the contractor. The contractor says that sum represented $1,000,000 for the balance of the purchase price and $3,700,000 for the costs of construction.
*82 City Federal’s attorney presented a set aside letter to the contractor’s agent stating that the letter was to evidence and confirm to the contractor and its surety that the contractor was approved by City Federal as the general contractor for the project and that City Federal would provide funds to the owner in the amount of $4,722,822 for payment to the contractor over the term of the construction period provided in the contract of construction, and in accordance with the terms of City Federal’s construction loan agreement with the owner. The contractor’s agent contacted the contractor to verify the acceptability of the language in the set aside letter. The contractor agreed to the language contingent upon receipt of a copy of the construction loan agreement. The contractor’s agent released the contractor’s executed deed to City Federal’s attorney, but the agent was not shown a complete copy of the construction loan agreement. Several months later, the contractor learned that one of the provisions deleted from the copy of the construction loan agreement shown to the contractor’s agent was a requirement by City Federal that a $1,000,000 letter of credit be provided by the owner at closing. The contractor insists that had it known of this requirement, it would not have continued with the project and would have demanded the return of its executed deed.
Thereafter, City Federal, without notifying the contractor, unilaterally modified the terms of the construction loan agreement by partially funding the loan. City Federal then proceeded to have the contractor’s deed recorded. City Federal informed the owner, but not the contractor, that City Federal “shall not be obligated to make any further advances under the loan until such time as a letter of credit has been received and approved and all other relevant terms and provisions of the loan agreement have been satisfied.”
The contractor performed in accordance with its contract for construction through January of 1986. After submitting the pre-approved first application for payment, which was denied by the owner due to a lack of funds, the contractor learned for the first time of the events surrounding the $1,000,000 letter of credit and that City Federal was refusing to disburse any loan proceeds until receipt of that letter of credit. The contractor then attempted to assist the owner in obtaining the letter of credit, but those efforts were unsuccessful. Finally, City Federal agreed to cure the owner’s default if it received $600,000 in certificates of deposit in place of the $1,000,000 letter of credit. The owner would fund the certificates of deposit in part by the sum of $250,000 withheld from the contractor’s first application for payment in the amount of $988,718 which had been due since January 28, 1986. The contractor gave its consent to the withholding of $250,000 from its first application for payment. As security for its pledge, the contractor received a third mortgage on the property. After the $600,000 in certificates of deposit were placed, City Federal proceeded to disburse loan proceeds to the owner and to the contractor. Construction on the hotel project continued for approximately one year without any complications.
On June 5, 1987, the contractor made its final application for payment in the amount of $546,747.70. Thereafter the contractor received a check from the owner in the amount of $300,000 as partial payment toward the balance due. City Federal notified the contractor that in order to pay the remainder of the final application for payment, money would have to be withdrawn from the $600,000 placed in certificates of deposit, since the balance of the loan proceeds had been used to pay the costs of converting the construction loan into a permanent loan. On August 4, 1987, the contractor received a check from the owner in the amount of $236,746.70 representing the balance of the final draw request. City Federal depleted the entire $600,000 in order to meet the owner’s payment obligations, including the contractor’s final application for payment. Neither City Federal nor the owner paid the contractor any sum as reimbursement for the $250,000 pledge of the contractor included in the certificates of deposit for $600,000.
*83 This action basically represents the effort of City Federal to foreclose the first mortgage on the hotel property given by the owner to secure the loans made by City Federal to the owner. The owner defaulted under the terms of the mortgage and subsequently filed for bankruptcy. The contractor was made a defendant in the foreclosure proceedings because it held a third mortgage for $250,000. The contractor filed affirmative defenses and a counterclaim, seeking to have its third mortgage declared superior to City Federal’s mortgage or, alternatively, to recover damages on the theory of promissory estoppel. All of the contractor’s legal theories of defense or for affirmative relief arise from the alleged misrepresentation of City Federal in not revealing to the contractor that it required a $1,000,000 line of credit in order to make the construction loan; or stated otherwise, City Federal’s representation that it had agreed to make the loan without requiring a $1,000,000 line of credit. That requirement, of course, was reflected in the construction loan agreement between City Federal and the owner.
The trial court conducted a nonjury trial on the affirmative defense of the contractor that City Federal’s first mortgage should be equitably subordinated to the contractor’s third mortgage because of City Federal’s alleged misrepresentation. The trial court resolved the matter in favor of City Federal and entered a final judgment accordingly. Thereafter the trial court entered summary judgments against the contractor on its claim for damages based on promissory estoppel.
As noted above, after the contractor filed this appeal, City Federal was declared insolvent and Resolution Trust Corporation was appointed its receiver. This fact was brought to our attention by a motion to substitute the receiver as appellee. That motion was followed by a motion to dismiss this appeal as moot under the provisions of 12 U.S.C. § 1823(e), which is a codification of the doctrine of D’Oench, Duhme & Co. v. Federal Deposit Insurance Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1941) (federal policy is to shield FDIC from prior misrepresentations affecting the genuineness or integrity of assets reflected in a bank’s records). Resolution Trust Corporation is specifically entitled to the protection of 12 U.S.C. § 1823. 12 U.S.C. § 1441a(b)(3)(D). 12 U.S.C. § 1823(e) provides that:
No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 11 [12 U.S.C. § 1821], either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
(1) is in writing,
(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
(4) has been, continuously, from the time of its execution, an official record of the depository institution.
Resolution Trust Corporation, as receiver of City Federal, asserts that the contractor’s position in this litigation cannot survive the application of section 1823(e). It claims entitlement to judgment under section 1823(e) as a matter of law. On that basis, the receiver asked this court to dismiss the appeal as moot. We directed the parties to address this issue at oral argument and, thereafter, entered an order that the parties submit briefs on the matters raised in the motion to dismiss for mootness.
The contractor, of course, has vigorously argued that its defenses and counterclaim are not foreclosed by section 1823(e). At first, it appeared so because that section refers to an “agreement.” However, the Supreme Court has ruled that the word “agreement” in that section encompasses more than an express promise to perform an act in the future; it includes misrepre *84 sentation defenses and, if the requirements of section 1823(e) are not met, such defenses are barred. Langley v. Federal Deposit Insurance Corp., 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). In Langley, Planters Trust & Savings Bank brought suit to recover the principal and interest due under a promissory note given by Mr. and Mrs. Langley to secure a loan providing funds for the purchase of certain real property. The Langleys brought a separate suit to recover damages against Planters and alleged as one of the grounds of that suit, and as a defense against Planters’ collection suit, that the land purchase and the note had been procured by misrepresentations; specifically, the bank’s misrepresentations that the property conveyed in the land purchase consisted of more acreage than it actually did, that it included 400 mineral acres, when in fact it contained only 75 acres, and that there were no outstanding mineral leases on the property, when in fact there were.
The Court noted in Langley that no reference to these representations appeared in the documents executed by the Langleys, in the bank’s records, or in the minutes of the bank’s board of directors or loan committee. After the bank was declared insolvent, the Federal Deposit Insurance Corporation was appointed its receiver. FDIC raised the defense of section 1823(e). The Court held that the representations alleged by the Langleys did not meet the requirements of the statute and could not be asserted as defenses against collection of their promissory note. Significantly, the Court rejected the argument that section 1823(e) does not cover a fraudulent misrepresentation and also rejected the argument that since FDIC had knowledge of the asserted defense at the time it acquired the note, FDIC was not entitled to section 1823(e) protection. The court concluded that neither fraud in the inducement nor knowledge by FDIC was relevant to the section’s application.
Two other cases of note are Federal Savings & Loan Insurance Corp. v. Two Rivers Associates, 880 F.2d 1267 (11th Cir.1989), and Federal Savings & Loan Insurance Corp. v. Homes International Development Corp., 721 F.Supp. 290 (S.D.Fla.1989). Two Rivers involved the holder of a purchase money mortgage which was subordinated to mortgages held by Sunrise Savings & Loan Association securing construction loans to Two Rivers. In Sunrise’s mortgage foreclosure suit, the holder of the subordinated mortgage contended that his mortgage should be made superior to Sunrise’s mortgages because Sunrise had represented that it would disburse moneys to fund the entire Two Rivers project and did not. The court held that this position could not prevail under section 1823(e) after FSLIC was appointed as receiver of Sunrise. The court noted that the counterclaims attempted to be asserted by the holder of the subordinated mortgage were based on the same alleged misrepresentation; and they also were barred. The counterclaims were for breach of contract, fraud, and breach of fiduciary duty by a joint venturer.
In Homes International, FSLIC as receiver of a failed savings and loan association sought to foreclose a mortgage securing a promissory note for $8,900,000. Twin Construction, Inc., sought to foreclose a mechanic’s lien for $1,500,000 on the same property. Each sought priority of payment. The owner had advised Twin Construction that it was unable to pay the balance due under its contract with Twin Construction. Twin Construction asserted that it continued work under the contract because of oral representations by the savings and loan institution that additional payment would be forthcoming from the loan proceeds. The district court concluded that FSLIC was entitled to priority as a matter of law under the D'Oench doctrine (section 1823(e)).
The suits in Langley, Two Rivers, and Homes International all originated in state courts, the last two in Florida.
These authorities persuade us that the position of City Federal’s receiver is correct. We grant the receiver’s motion for substitution of parties, finding it necessary for the disposition of this appeal. Fla.R.App.P. 9.360(c). We note that FIRREA contemplates that Resolution Trust Corpo *85 ration be substituted as a party in any proceeding to which its predecessor in interest was a party. 12 U.S.C. § 1441a(a)(1), (2).
We hold that Resolution Trust Corporation as receiver of City Federal is entitled to final judgment as against the contractor in this action on all issues as a matter of law. Accordingly, we affirm.
SCHEB, A.C.J., and PATTERSON, J., concur.