[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PREJUDGMENT REMEDY APPLICATIONS
The Federal Deposit Insurance Corporation ("FDIC"), receiver of the now defunct Mechanics Farmers Bank of Bridgeport, applied for two prejudgment remedies to secure any judgments obtained on two promissory notes executed by the defendants. One note was in the amount of $420,000.00 and the other in the amount of $945,000.00. Defendant Lydia Menendez ("defendant LM") appeared at the probable cause hearing and contested the applications. She asserted the defenses of duress, negligence, lack of consideration and lack of mutual assent. Her husband, defendant Serafin S. Menendez ("defendant SM"), did not appear.
A probable cause hearing is not a trial on the merits, and the court does not have to determine whether the plaintiff will ultimately prevail in the action. Rather, the court determines whether there is probable cause to sustain the validity of the CT Page 11263 plaintiff's claim. In making that determination, the court must consider evidence of defenses to the claim. Indeed, evidence of defenses may preclude a finding of probable cause. Augeri v. Wooding, 173 Conn. 426 (1977); Haxhi v. Moss, 25 Conn. App. 16,20 (1991).
Plaintiff contends that none of the defenses asserted by defendant LM may properly be raised against FDIC under case law and federal statute commonly referred to as the "D'Oench Duhme doctrine." In D'Oench, Duhme Co., Inc. v. Federal Deposit Ins. Corp., 315 U.S. 447 (1942), the United States Supreme Court precluded certain personal defenses of a notemaker against the FDIC which had taken over an insolvent bank. The policy underpinning the ruling was protection of the FDIC and the public funds which it administers. D'Oench, Duhme Company executed certain notes to the bank, which became insolvent thereafter, under an agreement that the notes would not be called. This device was used to cover up the fact of certain bond losses the bank had suffered from bonds sold to the bank by D'Oench, Duhme. Under this scheme, the past due bonds did not appear among the bank's assets; rather, the notes of D'Oench, Duhme appeared making the bank appear more fiscally sound than it actually was. When the FDIC sued D'Oench, Duhme on one of the notes, the Supreme Court ruled that D'Oench, Duhme would not be allowed to assert the accommodation nature of the notes against the FDIC as a defense. This preclusion of defenses doctrine has been codified in 12 U.S.C. § 1823(e).
Defendant LM argues that Langley v. FDIC, 484 U.S. 86 (1987), stands for the proposition that real defenses such as fraud in the factual may be asserted against the FDIC despite the D'Oench Duhme doctrine. She argues by extension that duress, as a real defense under the Uniform Commercial Code, Connecticut General Statutes 42a-3-305, should also be exempt from the application of the D'Oench Duhme doctrine.
Defendant LM also argues that the personal defenses of negligence, lack of consideration and a lack of meeting of the minds should also be allowed despite the D'Oench Duhme doctrine. She reasons that, as D'Oench Duhme involved fraud, the fact that defendant LM is innocent of any fraud should make the doctrine unavailable to the FDIC in this case.
The court finds it unnecessary to rule on the applicability of the D'Oench Duhme doctrine. Assuming, arguendo, that these CT Page 11264 claimed defenses are allowable, they do not defeat the probable cause which has been established by the plaintiff.
I. THE DURESS DEFENSE
Defendant LM testified that her husband, defendant SM, has problems with authority figures and cannot work in a corporate structure. She seemed to imply that this was somehow attributable to his Cuban heritage. It was, therefore, necessary for him to be self-employed. These two notes were executed in connection with his real estate acquisition and management business. She signed the notes at her husband's request fearing that she did not have a choice as a refusal might have jeopardized family unity and the family's financial future.
Defendant LM also felt that a failure to cooperate with her husband might even result in his leaving the family. This fear was bolstered in her mind because of an earlier experience in which she and her husband took a year off and sailed around the world. The footloose side of her husband's nature became apparent to her during that trip and she was very concerned that he might leave.
She testified that she was driven to sign the notes out of emotional and economic duress, although she conceded that any economic duress was in the future with respect to her family. That is so because she had independent means from an inheritance from her family. In fact, her stock portfolio was valued at approximately $275,000.00 in 1990 and she had previously lent her husband $100,000.00 for use in his business.
The circumstances surrounding the two loans might have indeed been emotionally stressful for defendant LM. Had her husband left, she might well have had to resort to her own assets in addition to her part time employment to take care of herself and her family. These circumstances may have presented her with difficult choices but hardly rise to the level of duress which would defeat plaintiff's actions on the notes.
II. THE PERSONAL DEFENSES
Defendant LM's claims of negligence, lack of consideration and absence of a meeting of the minds require little discussion.
Defendant claims that Mechanics Farmers Bank was somehow CT Page 11265 negligent in not getting a financial statement from defendant LM or taking an application for the loan from her. There is no evidence to show that such actions were required under the circumstances here.
With respect to the claim of lack of consideration, plaintiff testified that she worked part time making approximately $12.00 per hour. Other than the loan of $100,000.00 to defendant SM, there is no evidence that she used her funds to support the family's lifestyle in Westport. She was obviously a beneficiary of the fruits of her husband's business which was financed through the subject notes. More importantly, it is hornbook law that legal consideration requires a bargained for exchange. In return for her signature, defendant LM received exactly what she bargained for: the loans to her husband.
Lastly, her claim that she did not understand what she was doing or realize that she could be liable on these notes is unavailing. She was represented by counsel in both transactions and is a graduate of Smith College, apparently able to manage her stock portfolio. Further, she testified that she knew what a promissory note was when she signed and asked her lawyer no questions. The claim of lack of understanding is not credible. Although she hoped and expected that her husband (or his partner in one transaction) would pay, she clearly understood that she could be held liable.
The court finds probable cause to sustain the validity of each of the plaintiff's claims and orders a prejudgment remedy in the amount of $1,200,000.00. Plaintiff is to submit a proper order for signature.
E. EUGENE SPEAR, JUDGE CT Page 11266