**RESOLUTION TRUST CORPORATION,**
**Plaintiff,**

v.

**Kenneth J. KOOCK, Defendant.**

**Civ. A. No. 94–1102.**

United States District Court,
E.D. Pennsylvania.

Aug. 1, 1994.

Miles H. Shore, Saul, Ewing, Remick & Saul, Philadelphia, PA, for plaintiff.

Ruth R. Wessel, Obermayer, Rebmann, Maxwell and Hippel, Philadelphia, PA, for defendant.

### ORDER–MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

AND NOW, this 1st day of **August 1994,** upon consideration of the Motion of Defendant Kenneth Koock for Relief From Judgment Under Rule 60(b) (Docket Entry No. 5) and plaintiff Resolution Trust Corporation's response (Docket Entry No. 6), it is **ORDERED** that the motion is **DENIED** upon the following reasoning:

1. On February 16, 1994, the Resolution Trust Corporation (the "RTC"), in its capacity as receiver for Atlantic Financial Savings, F.A. ("Atlantic Savings"), confessed judgment in the amount of $121,206.83 against defendant Kenneth Koock pursuant to a confession of judgment provision contained in a promissory note (the "Note") executed by the defendant on February 27, 1986.

2. The Note was payable to Atlantic Financial Federal ("Atlantic Financial"), a federally-chartered savings association with a place of business in Bala Cynwyd, Pennsylvania. On January 11, 1990, the RTC was appointed receiver for Atlantic Financial. Thereafter, the RTC was also appointed receiver for Atlantic Savings, which had acquired certain assets from Atlantic Financial. By virtue of its appointment as receiver for Atlantic Savings, the RTC succeeded to all the rights, titles, powers and privileges that Atlantic Savings had acquired from Atlantic Financial.

3. Defendant now seeks to vacate and set aside the confessed judgment. To do so he invokes the authority of Federal Rule of Civil Procedure 60(b), which provides in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . any . . . reason justifying relief from the operation of the judgment.

4. "The threshold question . . . is whether [defendant] has established a meritorious de-fense. This is the critical issue because without a meritorious defense [defendant] could not win at trial. Therefore, there would be no point in setting aside the . . . judgment . . ." *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 195 (3d Cir.1984). The Court concludes that defendant in this case has failed to establish a meritorious defense and therefore will not set aside the judgment.

■ 5. As his first defense, Defendant contends that the RTC lacks standing to confess judgment because its complaint does not sufficiently allege that it has an interest in the Note. The Court disagrees. Paragraphs 4 through 12 of the complaint trace the Office of Thrift Supervision's intervention in both Atlantic Financial and Atlantic Savings and its appointment of the RTC as receiver for both institutions. The complaint also alleges that the RTC, as receiver for Atlantic Financial, entered into a Purchase and Assumption Agreement with Atlantic Savings to acquire certain assets and accept the transfer of certain liabilities. In clarification of the phrase "certain assets" Paragraph 12 of the complaint specifically alleges that the RTC became the holder of the Note: "Plaintiff is the holder of the [Note]; there have been no assignments of the [Note] other than to the Conservator and to the Receiver." Complaint, ¶ 12.

■ 6. As his second defense, the Defendant contends that the Note was procured by fraud in violation of Section 10(b) of the Securities Exchange Act of 1934. The Note was executed in connection with defendant's purchase of certain securities related to limited partnership interests in wind turbines. Triad American Energy ("Triad") made the securities offering in affiliation with Atlantic Financial. Defendant claims that one of Triad's sales agents showed him a private placement memorandum prepared by Triad that contained fraudulent cash flow projections and that the memorandum induced him to purchase the securities. Defendant also alleges that Atlantic Financial, which financed most of the purchase price of defendant's investment in the securities, knew of Triad's alleged fraud.

7. The federal common law has long prevented borrowers from raising "secret agreements" in defense to actions to enforce ostensibly unconditional obligations they owe to the receivers of federally insured financial institutions. *See Adams v. Madison Realty & Development, Inc.*, 937 F.2d 845, 852 (3d Cir.1991) ("The rule emerging from *D'Oench, Duhme* is that no agreement between a borrower and a bank which does not plainly appear on the face of an obligation or in the bank's official records is enforceable against the FDIC.").[1] Since the "agreement" asserted by defendant (the private placement memorandum given to him by Triad's agent), was neither approved by Atlantic Financial's board of directors nor recorded in its books, he is estopped from raising the alleged misrepresentations that it contains as a defense.

8. The *D'Oench, Duhme* doctrine is generally thought to have been codified by Congress in 12 U.S.C. § 1823(e) which is part of the Federal Deposit Insurance Act of 1950.[2] *See Adams v. Madison Realty & Development, Inc.* at 852. Applying Section 1823(e) to defendant's claim would produce the same result as under the *D'Oench, Duhme* doctrine. *See Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 93, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987) ("[n]either fraud in the inducement nor knowledge by the [federal receiver] is relevant to [§ 1823(e) ]'s application ... the fraudulent nature of a *promise* would not cause it to lose its status as an 'agreement.' ") (emphasis in original).

Only fraud in the factum—that is, the sort of fraud that procures a party's signature to an instrument without knowledge of its true nature or contents—would take the agreement outside the scope of § 1823(e), because it would render the instrument void, thus leaving no "right, title or interest" that could be diminished. Defendant has not contended, however, that the alleged misrepresentations contained in the private placement memorandum are fraud in the factum. It is clear that Triad's alleged misrepresentations would constitute only fraud in the inducement which renders the Note voidable, but not void. *See Langley* at 93–94, 108 S.Ct. at 402–03.

9. As his third defense, defendant contends that the action is barred by the applicable statute of limitations. He claims

---

1. The *D'Oench, Duhme* doctrine applies to both the Federal Savings and Loan Insurance Corporation and the RTC as well as to the FDIC. *See Adams v. Madison Realty & Development, Inc.* at 852.

   In *D'Oench, Duhme & Co., Inc. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the securities broker petitioner sold bonds to the Bellville Bank & Trust Company in the 1920s. After the bonds defaulted, the bank asked D'Oench, Duhme to sign new notes so that the bank could avoid carrying the past due bonds on its books. The payments on the past due bonds were to be credited against the outstanding balance of the new notes and the receipts for the new notes contained a statement to the effect that they would not be called for payment and all interest payments would be repaid. *Id.* at 454, 62 S.Ct. at 678. In 1933, D'Oench, Duhme executed a new note in renewal of the notes it signed in 1926 with no change of terms. In 1938, the FDIC acquired the renewal notes after the bank failed. Although the bank had charged off the renewal note in 1935, the FDIC made a demand for payment. D'Oench, Duhme responded by producing the receipts which clearly showed the agreement that the note would never be enforced. The Supreme Court found that D'Oench, Duhme had violated the policy prohibiting the misrepresentation of bank assets by lending itself to a scheme which misled banking authorities and thus held that it was estopped from raising its secret agreement with the bank as a defense to enforcement of the note. *Id.* at 461–62, 62 S.Ct. at 681–82.

2. Title 12 U.S.C. § 1823(e) provides as follows:

   (e) Agreements against interests of Corporation

   No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—

   (1) is in writing,

   (2) was executed by the depository institution and person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

   (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

   (4) has been, continuously, from the time of its execution, an official record of the depository institution.

that the RTC's cause of action accrued and the statute of limitations began to run upon execution of the Note because its confession of judgment provision allowed it to be enforced without default. According to this argument, the statute would have expired on February 27, 1990. The Court rejects this argument.

■ 10. In the absence of a demand, defendant was required to make payments on the Note in quarterly installments. It is well accepted that a cause of action under an installment contract accrues upon failure to pay an installment. *See* 4 *Corbin on Contracts* § 951 (1951) ("Where an installment contract contains an acceleration clause making all installments payable in case of failure to pay any one installment when due ... the statute [of limitations] does not begin to run against [any particular installment] until each falls due in regular course"); *Dairy Investments, Inc. v. Commonwealth of Pennsylvania,* 67 Pa.Cmwlth. 10, 445 A.2d 1340, 1341 (1982) ("[a] party's causes of action on monthly installments ... accrue only as each such installment is due.").[3] The Note in question contained an acceleration clause and, by his own admission, the defendant made his last payment on the Note in July, 1990. Defendant's Affidavit, ¶ 9. Therefore, when the RTC filed this lawsuit on February 16, 1994, it was well within the four-year statute of limitations. *See* 42 Pa.Cons.Stat. Ann. § 5525 (1982).[4]

■ 11. Finally, although it is not clear from his brief, defendant seems to argue that he breached the contract in June of 1988, when he began marking his payments to Atlantic Federal "under protest." According to this argument, the statute of limitations would have expired in June of 1992. The Court finds, however, that marking his payments "under protest" was not sufficient to communicate to Atlantic Federal that plaintiff was defaulting on the Note, especially

since plaintiff continued to make payments on the Note for two years after the alleged default.

IT IS SO ORDERED.

---

**3.** The Note itself contains a provision based upon this rule. The section entitled "Defaults," provides that "[t]he [defendant] shall be in default hereunder upon the occurrence of any of the following events: (a) the nonpayment when due of any amount payable on any of the Liabilities ..." Plaintiff's Memorandum of Law, Exhibit B.

**4.** Because the action was brought within the four-year limitation period, the Court need not decide whether the longer limitation periods provided by 42 Pa.Cons.Stat.Ann. § 5529 (1982) and 12 U.S.C. § 1821(d)(14), respectively, are applicable to this case.