**E. J. SEBASTIAN ASSOCIATES, a South Carolina General Partnership, Plaintiff–Appellant,**

v.

**RESOLUTION TRUST CORPORATION, as receiver of Standard Federal Savings Bank, Columbia, South Carolina, Defendant–Appellee,**

**and**

**Standard Federal Savings Bank, formerly known as Standard Federal Savings & Loan Association, Defendant.**

**No. 94–1679.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 2, 1994.

Decided Dec. 29, 1994.

---

**ARGUED:** Harry Clayton Walker, Jr., Swagart & Walker, P.A., Columbia, SC, for appellant. William Thomas Toal, Johnson, Toal & Battiste, Columbia, SC, for appellee.

Before RUSSELL and WIDENER, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

Reversed and remanded by published opinion. Senior Circuit Judge CHAPMAN wrote the opinion, in which Judge RUSSELL and Judge WIDENER joined.

## OPINION

CHAPMAN, Senior Circuit Judge:

E.J. Sebastian Associates ("Sebastian") brought suit against the Resolution Trust Corporation ("RTC"), as receiver for Standard Federal Savings Bank, Columbia, South Carolina ("Standard Federal"), for breach of contract and in *quantum meruit* in the United States District Court for the District of South Carolina. Sebastian seeks compensation for services it allegedly rendered to Standard Federal prior to its being taken over by RTC. The RTC moved for summary judgment claiming that the *D'Oench* Doctrine and § 1823(e) barred Sebastian's claims. The district court agreed and granted the motion finding that the *D'Oench* Doctrine and § 1823(e) barred Sebastian's claims as a matter of law. After careful consideration of the record, the briefs, and oral arguments, we find the grant of summary judgment on the present record was error, and for the reasons discussed below, we reverse and remand to the district court for further development of the facts.

### I.

Standard Federal retained Sebastian to assist it in raising additional capital and agreed to pay Sebastian one percent of the additional capital obtained as a result of Sebastian's assistance. Standard Federal realized $22,000,000 in new capital from the sale of its stock due to Sebastian's efforts. Although Sebastian completed performance under its agreement with Standard Federal, the bank refused to pay Sebastian its agreed upon commission ($220,000). For the purposes of this appeal, the parties do not dispute that there was an oral contract and that Sebastian performed its obligations thereunder.

The RTC became receiver of Standard Federal, and Sebastian filed an administrative proof of claim with the RTC on December 12, 1991, seeking compensation for its services rendered to Standard Federal. By

letter dated February 18, 1993, the RTC denied Sebastian's claim. Sebastian sued the RTC on April 15, 1993, upon two theories of liability. First, Sebastian contends that the RTC's refusal to pay the claim constitutes a breach of the contract between Sebastian and Standard Federal. In the alternative, Sebastian contends that it is entitled to recover in *quantum meruit* the reasonable value of the services it rendered to Standard Federal.

■ Because the district court found that § 1823(e) and the *D'Oench* Doctrine applied to Sebastian's claim and because Sebastian's contract was not in writing, Sebastian's claim was unenforceable against the RTC. Summary judgment was granted and Sebastian appeals. We review *de novo* the district court's granting of summary judgment. *EEOC v. Clay Printing Co.*, 955 F.2d 936 (4th Cir.1992).

## II.

■ In *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), a bank accepted a series of notes from a securities firm, but the bank's representatives agreed never to collect on the notes. The transaction was intended to keep the bank from showing a loss that it had incurred from another debtor's default. When the bank subsequently failed, the FDIC attempted to collect on the notes. A suit ensued, and D'Oench asserted his undisclosed agreement with the bank's representatives as a defense to collection. The FDIC argued that D'Oench should be estopped from asserting the undisclosed agreement as a defense because the FDIC had no knowledge of the agreement. *Id.* at 454–56, 62 S.Ct. at 678–79.

The Supreme Court found that public policy favored protecting the FDIC and the public from agreements which misrepresented the assets of insured institutions. *Id.* at 457, 62 S.Ct. at 679. The Court fashioned a federal rule which prevents a borrower from asserting against the FDIC defenses based upon secret, unrecorded side agreements that modify the terms of otherwise apparently unqualified obligations from the borrower to the bank. "The test is whether the note was designed to deceive the creditors or the public authority, or would tend to have that effect." *Id.* at 460, 62 S.Ct. at 681.

Following *D'Oench*, Congress substantially codified the *D'Oench* Doctrine in § 1823(e):

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement (1) is in writing, (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e) (Supp. V 1993).

Section 1823(e) is essentially encompassed within the principles of the *D'Oench* Doctrine. *Firstsouth, F.A. v. Aqua Constr., Inc.*, 858 F.2d 441 (8th Cir.1988). The *D'Oench* Doctrine and § 1823(e) are often construed in tandem. *Beighley v. FDIC*, 868 F.2d 776, 784 (5th Cir.1989). The Supreme Court enunciated two primary purposes of § 1823(e) in *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987).

One purpose ... is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets.... Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions.

A second purpose ... is implicit in its requirement that the "agreement" not merely be on file in the bank's records at the time of an examination, but also have been executed and become a bank record "contemporaneously" with the making of the note and have been approved by offi-

cially recorded·action of the bank's board or loan committee. These latter requirements ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure.

*Id.* at 91–92, 108 S.Ct. at 401.

■ We question the applicability of the *D'Oench* Doctrine and § 1823(e) in the present context for two reasons. First, Sebastian's claim involves a contract for services, not the lending of money. Cases applying the *D'Oench* Doctrine traditionally involve a claim based upon an oral side agreement which contradicts a written document. Typically, *D'Oench* arises to bar a claimant from disputing the enforcement of a written loan agreement based upon an oral agreement that the claimant professes to have entered into with a bank official. *D'Oench* declared that such oral agreements are unenforceable; and therefore, the written loan agreement prevails. Sebastian's claim is based upon an oral agreement with Standard Federal; however, his claim does not contradict any prior written contract between the parties. Therefore, this case does not appear to present the traditional *D'Oench* Doctrine scenario.

Second, we must consider the potential results of applying the *D'Oench* Doctrine and § 1823(e) to contracts for services. For example, must everyone furnishing supplies or services to a bank comply with the stringent requirements of § 1823(e) in order to be guaranteed payment in the event that the bank fails before he receives compensation for his services? *See Thigpen v. Sparks,* 983 F.2d 644, 649 (5th Cir.1993). The Fifth Circuit recognized:

> [t]he purposes of neither the recordation nor approval requirements of *D'Oench* would be furthered by including non-banking transactions within the aegis of the doctrine. The substantial volume of information regarding areas of commerce outside the bank examiners' expertise or cognizance, generated day by day in myriad non-banking transactions, would simply overwhelm the bank's officers and directors . . . .

*Alexandria Assoc. v. Mitchell Co.,* 2 F.3d 598, 603 (5th Cir.1993).

Because of the potential for extending the *D'Oench* Doctrine and § 1823(e) beyond their intended scope, we hold that the district court erred in granting summary judgment based upon the facts before it. We do not hold that § 1823(e) and the *D'Oench* Doctrine may not apply in the present case, rather we remand the case to the district court for further development of the facts and a determination at that time of whether either of the two doctrines apply. For the foregoing reasons, the order of the district court is

*REVERSED AND REMANDED.*