**FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate Capacity, Plaintiff,**

v.

**Scott MANATT, Defendant.**

**No. J–C–87–53.**

United States District Court, E.D. Arkansas, Jonesboro Division.

May 25, 1988.

H. Keith Morrison, Little Rock, Ark., Jeffrey Axelrad, and Dina L. Biblin, U.S. Dept. of Justice, Washington, D.C. for plaintiff.

Scott Manatt, Corning, Ark., pro se.

## ORDER

ROY, District Judge.

Before the Court are Motions for Summary Judgment filed by both parties. Extensive briefs have been filed over a period of several months, and the matter is now ripe for determination.

This case arises out of a dispute over the liability of defendant on certain promissory notes that were given to Corning Bank. FDIC contends that it acquired the indebtedness totaling $316,531.76 due the bank when the Corning Bank closed on June 15, 1984. FDIC also contends that prior to the closing of the Bank, Manatt had conveyed certain items of collateral to the Bank, which were liquidated and sold, either by the Bank or by the FDIC, and the proceeds received thereon were applied in partial satisfaction of Manatt's indebtedness.

In its supplemental brief, FDIC cites the recent Supreme Court case of *Langley v. FDIC*, —— U.S. ——, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987) as being dispositive.

Manatt claims that he entered into a mutual agreement for liquidation of collateral on January 4, 1984, and that the execution of this document completely satisfied his indebtedness to the Bank. Manatt also raises issues of estoppel, res judicata and collateral estoppel, waiver and ratification.

In order for the agreement upon which defendant relies to be a valid defense in this case, the four requirements of 12 U.S.C. § 1823(e) must be met. This statute provides:

No agreement which tends to diminish or defeat the right, title, or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

If any one of the four requirements of § 1823(e) is shown to be unsatisfied, any side agreement between Manatt and the Bank is not enforceable against the FDIC. *See FDIC v. Gardner*, 606 F.Supp. 1484, 1488 (S.D.Miss.1985). Section 1823 does not grant the court discretion to balance the equities in determining whether an agreement can be enforced. *See FDIC v. TWT Exploration Co.*, 626 F.Supp. 149, 156 (W.D.Okla.1985).

The agreement which Manatt claims acts as an accord and satisfaction appears to have been executed on January 4, 1984. Section 1823(e)(2) requires that any such writing be executed contemporaneously with the acquisition of the asset by the bank. The "asset" at issue in the instant case is Manatt's indebtedness evidenced by the seven promissory notes. These notes were executed as early as December 1980. Prior to the decision in *Langley, supra*, the FDIC was ready to concede that a fact issue existed on the issue of whether or not the requirements of § 1823(e) had been met. However, FDIC argues that the Court in *Langley* addressed the "contemporaneously" requirement, and thus resolved the issue in the case *sub judice*. In *Langley*, the Court stated that § 1823(e) requires:

[t]he "agreement" not merely be on file in the bank's records at the time of an examination, but also have been executed and become a bank record "contemporaneously" with the making of the note ... *Id.*, 108 S.Ct. at 401.

These requirements ensure mature consideration of unusual loan transactions and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure. *Id.*

Manatt argues that § 1823(e) is not even applicable since an accord and satisfaction was reached prior to the FDIC acquiring the assets of the bank, citing *FDIC v. Nemecek*, 641 F.Supp. 740 (D.Kan.1986). Therefore, it is argued that the obligation on the notes was extinguished, and these "assets" being sued upon in this case were non-existent. Manatt further argues that even if § 1823(e) is applicable, his agreement met the requirements of § 1823(e) because it was contemporaneous with the acquisition by the Corning Bank of the assets conveyed by defendant.

■ In *Public Loan Company, Inc. v. FDIC*, 803 F.2d 82 (3rd Cir.1986) the Court held that plaintiffs could not successfully assert the defense of oral accord and satisfaction against the FDIC because it did not meet the statutory requirements of § 1823. Although this case involves the defense of written accord and satisfaction, it is clear that the statutory requirements of § 1823 must nevertheless be satisfied when the defense of accord and satisfaction is raised.

■ Even though defendant takes issue with the applicability of *Langley* to this case, the Court nevertheless finds the language persuasive. The Court in *Langley* clearly stated that the "agreement" must have been executed and become a bank record "contemporaneously" with the making of the note. As stated earlier, this requirement is to ensure mature consideration of unusual loan transactions by senior bank officials, and to prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure. The Court finds that the "contemporaneous" requirement has not been met.

This holding precludes the necessity of discussing the other three requirements under the statute. The Court notes that it does appear that there may be a fact question as to whether the agreement was kept continuously as an official record of the bank. However, although a reference to a mutual agreement for liquidation was made in the minutes, the reference did not specifically refer to defendant's agreement. The Court questions whether this vague reference to an agreement would satisfy the requirement under the statute. *See FDIC v. Gardner*, 606 F.Supp. 1484, 1488 (S.D.Miss.1985) (reference to the agreement must be specifically reflected in the minutes of the board or committee).

Even if the Court held that the requirements of § 1823(e) were met, the Court would nevertheless find the FDIC is entitled to partial summary judgment because there was no valid accord and satisfaction, and, the FDIC is a holder in due course of Manatt's notes.

■ The general rule is that an accord and satisfaction may not result from the partial payment of a liquidated or undisputed claim. *Dyke Industries, Inc. v. Waldrop*, 16 Ark.App. 125, 697 S.W.2d 936 (1985). In the present case, it is clear that both parties knew exactly how much was owed by Manatt to the Bank, precluding the assertion of accord and satisfaction.

■ Furthermore, even if a valid accord and satisfaction had been reached, summary judgment in favor of the FDIC would still be appropriate, because it is a holder in due course under federal common law.

The FDIC was organized and exists pursuant to the laws of the United States, 12 U.S.C. § 1811, *et seq.* Its primary function is to provide a system of insurance to stabilize or promote the stability of banks, protecting depositors of banking institutions from losses which would otherwise be occasioned upon the failure of such institutions. *First State Bank of Hudson County v. United States*, 599 F.2d 558 (3rd Cir.1979), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980).

All banks which are members of the Federal Reserve System are required to be insured under the Act. *Bank of China v. Wells Fargo Bank & Union Trust Co.*, 209 F.2d 467, 473 (9th Cir.1953).

When an insured bank becomes unable to meet its demand obligations, the FDIC may be appointed receiver. When a state bank is involved, as here, the FDIC may act in what has been termed a dual capacity. Under 12 U.S.C. § 1821(e), the corporation is authorized to accept the appointment as receiver of a state bank. *FDIC v. Ashley,* 585 F.2d 157, 161 (6th Cir.1978). With this appointment as receiver, the FDIC may enter into a purchase and assumption agreement with itself to allow the FDIC in what is termed its "corporate capacity" to purchase assets of the insolvent bank and facilitate the acquisition of the acceptable assets of the insolvent bank by a bank in the geographical vicinity. Assets purchased by the FDIC in its corporate capacity are acquired pursuant to 12 U.S.C. § 1823(e). The FDIC has been recognized as having broad powers to carry out its statutorily prescribed duties. *See, e.g., Chatham Ventures, Inc. v. FDIC,* 651 F.2d 355 (5th Cir.1981), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982) ("The FDIC may exercise all powers specifically granted ..., and such incidental powers as shall be necessary to carry out the powers granted.").

The federal courts have enunciated as a matter of federal common law a holder-in-due-course rule which is applicable to the FDIC when it acts in its corporate capacity. The Sixth Circuit Court of Appeals articulated this rule when it held that:

> [w]hen the FDIC in its corporate capacity, as part of a purchase and assumption transaction, acquires a note in good faith, for value, and without actual knowledge of any defenses against the note, it takes the note free of all defenses that would not prevail against a holder in due course.

*FDIC v. Wood,* 758 F.2d 156, 161 (6th Cir. 1985), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985). *Accord Gunter v. Hutcheson,* 674 F.2d 862, 872 (11th Cir.1982), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *FDIC v. Leach,* 525 F.Supp. 1379, 1384 (E.D.Mich. 1981) (FDIC granted a status superior to that of a holder in due course).

Because of the great number of banks which have failed in recent years, many courts have faced the same issues addressed in *Wood.* The consistent holding of these cases has been that the FDIC has holder-in-due-course status and is, therefore, shielded from the various defenses which are not ordinarily valid against a holder in due course. *See FDIC v. Armstrong,* 784 F.2d 741 (6th Cir.1986) (as holder in due course the FDIC takes notes free from defenses of failure of consideration, fraud in the inducement, and material alterations); *FDIC v. Leach,* 772 F.2d 1262 (6th Cir.1985) (state law defenses of usury and failure of consideration barred as a matter of federal common law); *FDIC v. Burger,* 631 F.Supp. 1141, 1144 (D.Kan.1986); *FDIC v. Vestring,* 620 F.Supp. 1271, 1273 (D.Kan.1985) ("personal" rather than "real" defenses ineffective as against the FDIC); *FDIC v. Galloway,* 613 F.Supp. 1392 (D.Kan.1985); and *FDIC v. Ramsey,* 612 F.Supp. 326, 327 (D.Tenn.1985).

■ Once it is established that the FDIC is a holder in due course, it becomes necessary to consider the effect of such legal status. A holder in due course generally takes free of "personal defenses," such as failure or lack of consideration, breach of warranty, unconscionability and fraud in the inducement. White and Summers, *Uniform Commercial Code,* § 14–9, at 573 (1980). The only defenses which may be asserted against a holder in due course are those "real defenses" enumerated in § 3–305(2). The only defense referred to therein which could conceivably encompass Manatt's claim of accord and satisfaction is the defense of "any other discharge of which the holder has notice when he takes the instrument." § 3–305(2)(e).

The FDIC cannot be charged with knowledge of a defense merely because the information could be found in the bank's files. Actual knowledge must be shown as of the date the FDIC took the notes. *FDIC v. Wood, supra.*

Manatt has already stated in his Rule 29 statement of uncontroverted facts that the FDIC had at least constructive notice of his agreement when it came into possession of

the Bank's records, and had actual notice when Manatt informed the FDIC's attorneys. Under either scenario the FDIC took the notes without actual notice of the agreement at the time it took the notes, and is entitled, therefore, to collect as a holder in due course. Regardless of whether a valid accord and satisfaction was entered into, such an agreement is simply not a defense to the FDIC as a holder in due course in the instant case.

■ Manatt asserts that the FDIC is estopped to deny the validity of the January, 1984 agreement. The Court is persuaded by plaintiff's arguments that estoppel cannot be asserted against the FDIC in this case. The Eighth Circuit has stated that it has not yet been held that the doctrine of equitable estoppel can be applied against the federal government. *McDermott v. United States*, 760 F.2d 879, 882 (8th Cir. 1985).

■ However, even if the Court were to hold the doctrine of equitable estoppel applicable, the defendant would have to show the traditional elements of estoppel and that the government engaged in "affirmative misconduct." *Green v. United States Dept. of Labor*, 775 F.2d 964, 970 (8th Cir.1985). Defendant relies heavily on the fact that the FDIC had knowledge of the agreement at the time the real estate previously owned by defendant was sold. Even assuming the facts as alleged by Manatt, there has been no showing of affirmative misconduct by FDIC. Even if FDIC agents had told Manatt they considered the agreement valid, this would not amount to affirmative misconduct. Furthermore, the defendant has failed to submit any documents which would indicate that the requirements in establishing estoppel set out in *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1217 (6th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987) have been met. The FDIC has carefully set out the facts as alleged by the defendant, and the Court will not reiterate them here. Suffice it to say that even taking all of the defendant's allegations as true, they do not rise to the level required to establish estoppel.

The same policy reasons which support a finding that equitable estoppel cannot be applied as against the FDIC also support the conclusion that estoppel by deed cannot be invoked against the FDIC.

In *DSI Corp. v. U.S.*, 655 F.2d 1072, 228 Ct.Cl. 299 (1981), the Court of Claims considered a party's contention that the government was subject to estoppel by deed. The court reviewed the policy against applying estoppel by deed and concluded that it could not be invoked because of the danger that it would stand in the way of important public policy and might stifle government operations. *Id.* 655 F.2d at 1077. Such reasoning is equally persuasive in the instant case.

■ Even if estoppel by deed could be invoked against the FDIC, estoppel by deed does not ordinarily apply to the grantee. 28 Am.Jur.2d *Estoppel and Waiver* § 13. Manatt is apparently trying, therefore, to fit the FDIC into one of the exceptions to this general rule by arguing that the FDIC is somehow attempting to enjoy the benefits of Manatt's deed and at the same time reject its burdens.

It is true that a grantee may not make claims inconsistent with the valid provisions of a deed. However, the FDIC is not making any such inconsistent claims. Nowhere in the deed is it suggested that all of Manatt's debt is being forgiven. The FDIC is not trying to reject the burden of this deed. In fact, it has already given Manatt credit for the amount realized from the sale of his property. Rather, the FDIC is simply trying to prevent Manatt from parlaying the "burden" of his deed into a complete forgiveness of his substantial indebtedness to the Bank.

■ Nor is the Court persuaded by Manatt's arguments regarding res judicata and collateral estoppel. As stated by the FDIC, the elements of res judicata were set out as follows:

> The doctrine of res judicata bars a later suit when (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involved the same cause of action; and (4) both suits involved the same parties or their privies.

*Lovell v. Mixon,* 719 F.2d 1373, 1376 (8th Cir.1983). Clearly, the third requirement is not met. The instant action and the case to which Manatt would give res judicata effect did not involve the same cause of action.

The court in *Lovell, supra,* also set out the elements of collateral estoppel:

> Under the doctrine of collateral estoppel, four criteria must be met before a determination is conclusive in a subsequent proceeding: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment and (4) the determination must have been essential to the judgment.

*Id.*

■ The issue sought to be precluded is the validity of the agreement. A review of the documents shows that the issue in the case *sub judice* was not the same as that litigated in the *Ballenger* case, nor was it actually litigated in that case. It follows that the issue of the validity of the agreement was not determined by a valid and final judgment, nor was it essential or even relevant to the judgment in *Ballenger.* The fact that there is a sentence in the Decree of Foreclosure in *Ballenger,* stating that "No other deficiency shall exist" does not require a contrary result. As stated by FDIC, when that sentence is read in context, it is clear that it meant that no deficiency would exist on the debt owed to the Ballengers unless the court determined such a deficiency within thirty days after the foreclosure sale. The sentence quoted above had nothing to do with Manatt's debts to the FDIC.

Manatt also raises the affirmative defense of waiver. A waiver is the voluntary and intentional relinquishment of a known right, claim or privilege. 28 Am.Jr.2d *Estoppel and Waiver* § 154.

■ The authority cited by Manatt makes it clear that public officers have no authority to waive enforcement of the law. *Id.* at § 155. Since the FDIC is acting pursuant to a federal statute, it is clear that even if FDIC employees had intentionally relinquished claims against Manatt, it would not amount to a waiver.

Even if the FDIC could waive its claims against Manatt, such a waiver did not occur in this case. The party claiming a waiver must show that the person against whom the waiver is asserted had knowledge of the existence of its rights and intended to give up those rights. *American National Bank and Trust Company of Chicago v. K–Mart Corp.,* 717 F.2d 394 (7th Cir.1983); *CBS, Inc. v. Merrick,* 716 F.2d 1292 (9th Cir.1983); *Kistler v. Gingles,* 88 F.Supp. 9 (W.D.Ark.1950).

None of the evidence presented by Manatt, even if assumed to be true for purposes of this motion, even begins to suggest that the FDIC intentionally waived its claims against Manatt. The defense of waiver is clearly not applicable to the facts of this case.

The only issue which appears to remain in this case is whether the collateral turned over to the Bank and later sold was sold for a reasonable price. The FDIC concedes that Manatt is entitled to credit to his account the value of the collateral. They have already credited defendant's account with the amount realized from the sales. Manatt contends that the items were not sold for an amount equal to their value. The Court finds that this issue should be resolved, either by agreement of the parties, or by a hearing.

Based upon the foregoing, the Court grants partial summary judgment in favor of the FDIC. The parties are directed to get together and try to agree upon an amount which represents the value of the collateral, and report to the Court the results of this meeting by no later than April 30, 1988. If this cannot be resolved, a hearing will be held.

The motion for partial summary judgment in favor of the FDIC is granted, the defendant's motion for summary judgment is denied.