**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Appellee,**

v.

**Scott MANATT, Appellant.**

**No. 89–2290EA.**

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1990.

Decided Jan. 3, 1991.

David Rees of Jonesboro, Ark., for appellant.

Keith Morrison of Little Rock, Ark., for appellee.

Before JOHN R. GIBSON, Circuit Judge, and FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge.

Scott Manatt, a lawyer for and stockholder of Corning Bank of Corning, Arkansas, borrowed $387,266.02 from the bank between December 1980 and October 1983. On January 5, 1984, Manatt, his wife, and Corning Bank entered into an agreement under which Corning Bank purported to extinguish Manatt's indebtedness and Manatt, in return, transferred property to the bank. The FDIC, acquired, among other things, seven Manatt notes, and subsequently attempted to collect on them. The issue in this appeal is whether the agree-

ment absolves Manatt from liability to the FDIC on the notes. We conclude that it does not and affirm the district court.[1]

## I. BACKGROUND

Scott Manatt was a stockholder of Corning Bank and also served as its attorney from time to time. While Scott Manatt claims he is not related by blood to the Manatt family that owned and operated Corning Bank, that family did raise him and he shares the family name.

Between December 1980 and October 1983, Corning Bank loaned Scott Manatt and his wife, Sharon, $387,266.02 in exchange for seven promissory notes. The Manatts executed a mortgage on real estate as security for one of the notes and granted the bank a security interest in a 1966 Piper aircraft as collateral for another note.

On January 5, 1984, Scott Manatt, Sharon Manatt and Corning Bank entered into a Mutual Agreement for Liquidation of Collateral. James D. Manatt, president of Corning Bank, signed the Mutual Agreement on behalf of the bank. In the agreement, Scott and Sharon Manatt conveyed three items to the bank: (1) the real estate previously mortgaged as security; (2) the Piper aircraft; and (3) a promissory note, with a principal amount of $50,000, from Betty and Leon Eagan.

At the end of 1983, the FDIC began examining Corning Bank to determine its financial condition. When the FDIC began its final examination on May 7, 1984, Manatt owed the bank $362,000 on the seven notes. Of that $362,000, the bank had charged off $242,000 and the FDIC examiners classified the remaining $120,000 as substandard.

On June 15, 1984, approximately six months after the Mutual Agreement was signed, the Arkansas Bank Commissioner concluded that Corning Bank was insolvent

and ordered it closed. The FDIC accepted appointment as receiver of the bank under 12 U.S.C. § 1821(e) (1988). As authorized by 12 U.S.C. § 1823(c)(2)(A) (1988),[2] the FDIC, acting in its corporate capacity, purchased some of the bank's assets, including the seven promissory notes from Scott Manatt. At that time, the notes were still in the bank's possession and, despite the Mutual Agreement, had not been cancelled.

The FDIC sold the collateral that Manatt had given the bank pursuant to the Mutual Agreement. The proceeds from these sales fell far short of the amount Manatt owed Corning Bank. Although the real estate secured a loan of $75,000, after deducting commissions and fees, the FDIC received only $22,848.96 when it sold the property. The Piper aircraft, which secured a note for $11,009, was sold for $7,000. The Eagans made payments totalling $5,371.90 on their promissory note, at first to the bank, and later to the FDIC. On October 14, 1984, however, the Eagans stopped making payments. They later filed for bankruptcy, and the bankruptcy court discharged the promissory note that the Manatts had assigned to Corning.

When the FDIC demanded that Scott Manatt repay the balance of the seven notes, he refused, claiming that the Mutual Agreement had extinguished his debt to Corning Bank. The FDIC then brought this action against Manatt.

The district court granted a partial summary judgment in favor of the FDIC. *FDIC v. Manatt*, 688 F.Supp. 1327, 1333 (E.D.Ark.1988). Relying upon *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the district court first held that Manatt was precluded by 12 U.S.C. § 1823(e)(2), from relying upon the Mutual Agreement as a defense against the FDIC because the Mutual Agreement was not executed contemporaneously with the bank's acquisition of the promissory

---

1. The Honorable Elsijane Trimble Roy, Senior United States District Judge for the Eastern District of Arkansas.

2. Section 1823 was amended on August 9, 1989, by Pub.L. 101–73, Title II §§ 201(a)(1), 217, 103 Stat. 187, 254. The current version can be

found at 12 U.S.C.A. 1823 (1989 West). The amendments to subsection (e) were only changes in style and format and did not alter the substance of the statute. Throughout this opinion we refer to the 1988 version of the statute.

notes. *Manatt*, 688 F.Supp. at 1329–30. The court also suggested that section 1823(e)(3) was not satisfied by the vague references to the Mutual Agreement contained in Corning Bank's board minutes. *Id.* at 1330. The court further held that the Mutual Agreement did not constitute a valid accord and satisfaction under Arkansas law because it provided for only partial payment of a liquidated claim. *Id.*

Alternatively, the court held that Manatt's defense was ineffective against the FDIC because the FDIC was a holder in due course. *Id.* In so holding, the court found that the FDIC purchased the notes in good faith and without notice of the Mutual Agreement. *Id.* at 1331–32. We need not decide this issue in light of our holding today.

The court also rejected Manatt's arguments under the doctrines of estoppel by deed, equitable estoppel, res judicata, collateral estoppel, and waiver. *Id.* at 1332–33. The partial summary judgment did not resolve the question of whether the FDIC sold the collateral for a reasonable price. *Id.* at 1333.

After conducting a hearing, the court required the FDIC to give additional credit to Manatt for the collateral which the FDIC sold. *FDIC v. Manatt*, No. J–C–87–53, slip op. at 7–8 (E.D.Ark. June 16, 1989). The court also rejected Manatt's claim that the bank owed him money for legal work he performed before the bank closed. *Id.* at 8. According to the district court, "[t]he proof presented on this point failed to raise Manatt's claim to attorney's fees above the level of speculation." *Id.*

After adding interest, the district court entered judgment against Manatt for $504,-595.33. *FDIC v. Manatt*, No. J–C–87–53 Judgment and Order (E.D.Ark. July 11, 1989). This appeal followed.

## II. DISCUSSION

■ Manatt claims that the Mutual Agreement satisfied the requirements of 12 U.S.C. § 1823(e). Much of his brief is devoted to challenging the district court's interpretation of the contemporaneousness requirement of section 1823(e)(2). Section 1823(e) provides that:

No agreement which tends to diminish or defeat the right, title or interest of the [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the [FDIC] unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

12 U.S.C. § 1823(e). Manatt tries to use the Mutual Agreement to defeat the FDIC's right to collect on the notes it acquired from Corning Bank. To have such effect, the Mutual Agreement must comply with all the requirements of section 1823(e).[3] If the agreement fails to meet any one of the four requirements therein, the FDIC is not bound by the agreement. Though the district court only suggested it, *Manatt*, 688 F.Supp. at 1330, we expressly

---

**3.** Contrary to the district court, we think that the Mutual Agreement between Manatt and the bank conceivably could have been an accord and satisfaction under Arkansas law. Though ordinarily a liquidated debt cannot be the subject of an accord and satisfaction as the district court concluded, *Manatt*, 688 F.Supp. at 1330 (citing *Dyke Industries, Inc. v. Waldrop*, 16 Ark. App. 125, 697 S.W.2d 936 (1985)), we read Arkansas case law to permit an accord and satisfaction where new and different consideration is accepted in fulfillment of a debt, though liquidated. *Jewell v. General Air Conditioning Corp.*, 226 Ark. 304, 308, 289 S.W.2d 881, 883 (1956); *Lamberton v. Harris*, 112 Ark. 503, 505–06, 166

S.W. 554, 555–56 (1914) (accord and satisfaction existed where landlord accepted cotton in lieu of undisputed amount of rent). The Mutual Agreement may have been of this latter variety of accord and satisfaction; however, it was never completed. The seven notes were never cancelled or returned to Manatt, thus the accord, if one at all, remained executory. *See General Air Conditioning Corp. v. Fullerton*, 227 Ark. 278, 298 S.W.2d 61, 64 (Ark.1957) (citation omitted). However, as in *FDIC v. Krause*, 904 F.2d 463, 466 (8th Cir.1990) (avoiding need to interpret Iowa law of accord and satisfaction), we need not ascertain Arkansas law in this matter be-

hold as a matter of law that the Mutual Agreement was insufficiently recorded in the minutes of the bank's Board of Directors to satisfy clause (3) of section 1823(e). The board minutes did not recite that the agreement was attached, or set out its terms, or even specifically refer to Scott Manatt. *See FDIC v. Kasal*, 913 F.2d 487, 490 (8th Cir.1990) (loan agreements were "never ... approved by the Bank's board of directors or loan committee, and never were maintained as part of the Bank's records"); *FDIC v. Krause*, 904 F.2d 463, 466 (8th Cir.1990) ("the agreement failed to meet at least one of the requirements—that approval by the board of directors or loan committee be reflected in the minutes of the board or committee"); *FDIC v. Gardner*, 606 F.Supp. 1484, 1488 (S.D.Miss.1985) ("acknowledgement of the side agreement must be specifically reflected in the minutes of the board or committee"). Hence, we do not reach the contemporaneousness issue resolved by the district court, and, in fact, have serious misgivings about its interpretation of that clause.[4]

Finally, Manatt advances several other arguments that merit only brief discussion. He contends that the FDIC is precluded from avoiding the effect of the Mutual Agreement by the doctrines of equitable estoppel, estoppel by deed, waiver, res judicata, and collateral estoppel. Manatt, however, fails to identify any flaw in the district court's careful consideration of these doctrines. *See Manatt*, 688 F.Supp. at 1332–33. Accordingly, we are not persuaded by Manatt's challenges.

Manatt also argues that the FDIC did not obtain a reasonable price when it sold Manatt's collateral and that Manatt should have received a credit for the value of legal services that he performed for the bank. The district court made specific findings that are contrary to Manatt's contentions. Manatt has not even argued, let alone demonstrated, that the court's findings were clearly erroneous. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 573–76, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). Therefore, these contentions are untenable.

As indicated, we affirm the judgment of the district court.

JOHN R. GIBSON, Circuit Judge, concurring specially.

I concur with the result the court reaches today and write separately only to express my view that the district court did not err in holding that the contemporaneous requirement of 12 U.S.C. § 1823(e)(2) was not met, and that Manatt has not established accord and satisfaction as an affirmative defense.

In ruling that the contemporaneous requirement was not met, the district court discussed the recent decision of the Supreme Court in *United States v. Langley*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), as do both parties on appeal. The facts in *Langley* are different than those before us. In *Langley*, the appellants purchased real estate from a bank in exchange for a note. The appellants claimed that they were induced to buy the property by the bank's verbal misrepresentations about the amount and characteristics of the land it was conveying. 484 U.S. at 87, 108 S.Ct. at 399.

---

cause whatever the agreement between the bank and Manatt might have been if completed, it failed to comply with the recordation requirement of section 1823(e)(3). Once the FDIC stepped in, prior proper recordation of the agreement was necessary.

**4.** While the district court held that the requirement in section 1823(e)(2) was not met, we are not so willing to embrace that view. We doubt that Congress intended that section 1823(e)(2)'s contemporaneousness requirement would defeat a valid accord and satisfaction entered into by a bank. Valid accord and satisfaction agreements are never contemporaneously executed

with the initial documents incurring the debt—the idea that they would be so executed is simply contrary to general business practice and to common sense. Surely Congress did not mean to preclude banks from getting something of value by an accord and satisfaction rather than nothing at all. *But see Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987); *FDIC v. Virginia Crossing Partnership*, 909 F.2d 306, 309 (8th Cir.1990). In any event, we leave the reach and scope of section 1823(e)(2) to another day, as an interpretation of that clause is not necessary to a decision in this case.

*Langley's* holding is narrow and is relevant only with respect to the contemporaneous requirement. In discussing section 1823(e), *Langley* referred to the word "agreement" in the statute as meaning an agreement that is executed and becomes a bank record contemporaneously with "the making of the note." *Id.* at 92, 108 S.Ct. at 401. The district court looked closely at *Langley* when determining that the contemporaneous requirement was not met.

The parties differ in their interpretation of the phrase "any asset" in section 1823(e). Manatt would limit this phrase to the collateral he and his wife surrendered in the Mutual Agreement. Manatt argues that he, his wife and the bank signed the agreement contemporaneously with the transfer of title in the collateral to the bank, thereby satisfying section 1823(e)(2).

The FDIC argues that "any asset" refers to the notes that it is attempting to collect. If the notes are the "assets" in question, the contemporaneousness requirement is not met by the Mutual Agreement because the notes were transferred to the bank long before the parties entered the Mutual Agreement.

The district court concluded that the FDIC's interpretation of the statute, that section 1823(e)(2) applies to "any asset acquired by it," was the correct view. Manatt tries to use the Mutual Agreement to defeat the FDIC's interest in notes that the FDIC purchased from Corning Bank. In this factual setting, the assets at issue— the assets that the FDIC is interested in and the assets that Manatt wants to avoid—are the seven promissory notes found in the bank's vault. Since the Mutual Agreement would diminish the FDIC's interest in assets it acquired, and the agreement was not executed at the same time Scott Manatt signed any of the original notes over to Corning Bank, that agreement does not comply with section 1823(e)(2) and is not valid.

**5.** This has particular application where a debtor attempts to reach an accord and satisfaction but fails to fully satisfy the terms of the accord before the FDIC takes control of a failing bank. This was the situation in Manatt's case. Manatt did not retrieve the notes from Corning, nor did Corning mark the notes "paid." In fact, because

This interpretation may make accord and satisfaction inapplicable when the FDIC purchases a bank's assets, since parties can never reach an accord and satisfaction that compromises a debt at the same time they create an original debt obligation.[5] By enacting section 1823(e), Congress was addressing the particular problem posed by the FDIC purchasing assets of a failed bank and agreements that might be used to diminish or defeat the interest of the FDIC in the assets. While an accord and satisfaction in which a bank accepted assets worth $136,000 to extinguish a debt of $387,266 may be of substantial concern to the board of directors and stockholders of a bank with continuing vitality, when the bank fails and must be taken over by the government as insurer of the bank's depositors, public concerns then arise. I believe that the district court correctly applied the statute, and I would affirm its holding on this basis. The wisdom of the Act of Congress is an issue we do not consider.

the Eagans received a discharge in bankruptcy for the $50,000 note, Manatt has never fully satisfied his obligations under the terms of the Collateral Agreement. I would also affirm the district court's ruling on accord and satisfaction.