**RESOLUTION TRUST CORPORATION, as Conservator of First Savings of Arkansas, F.A., by the FEDERAL DEPOSIT INSURANCE CORPORATION as Managing Agent for the Conservator, Plaintiff and Counter–Defendant,**

v.

**Trammell CROW, Harlan R. Crow, Charles M. Holbrook, Tom Teague, Pear Ridge II Associates, Chasewood Pear II Associates, Quinten's Crossing Joint Venture, North Richland Hills Associates, Chasewood Partners–Tarrant County, Jupiter I Associates, and Chasewood Jupiter Road I, Defendants, Counter–Plaintiffs, and Third–Party Plaintiffs,**

v.

**RESOLUTION TRUST CORPORATION, as Receiver of First Federal Savings of Arkansas, F.A., and the Federal Deposit Insurance Corporation as the Managing Agent for Resolution Trust Corporation, Third–Party Defendants.**

Civ. A. No. 3–89–2817–H.

United States District Court,
N.D. Texas,
Dallas Division.

Feb. 5, 1991.

On Motion for New Trial March 1, 1991.

Thomas R. Graber, Bradley A. Friedman, John H. Spellman, Howard D. Sorensen, Hopkins & Sutter, Dallas, Tex., for plaintiff and counter-defendant.

John Nabors, Jeff Travis, Liddell, Sapp, Zivley, Hill & LaBoon, Dallas, Tex., for defendants, counter plaintiffs, and third-party plaintiffs.

## MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court are the Motion for Summary Judgment of Plaintiff Resolution Trust Corporation as Conservator of First Savings of Arkansas, F.A. ("RTC/Conservator"), filed December 20, 1990; the Response of Defendants Trammell Crow, Harlan R. Crow, Charles M. Holbrook, Tom Teague, Pear Ridge II Associates, Chase-

wood Pear Ridge II Associates, Quinten's Crossing Joint Venture, North Richland Hills Associates, Chasewood Partners–Tarrant County, Jupiter I Associates, and Chasewood Jupiter I (collectively "Defendants"), filed January 24, 1991; the RTC/Conservator's Reply, filed February 4, 1991; Defendants Tom Teague and Chasewood Partners–Tarrant County's Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment, filed December 21, 1990; and the RTC/Conservator's Response, filed January 10, 1991.[1]

## I. Background.

This is a note case arising out of several real estate loans made in north central Texas in the early 1980s. Like many such cases, the litigation process has aged this dispute considerably, so that the parties by their present motions are disputing liability on notes that were defaulted upon over three years ago. The RTC/Conservator initiated this action to foreclose upon certain properties which serve as security for loans made to or guaranteed by Defendants and to obtain a deficiency judgment against them. Defendants brought counterclaims and cross-claims against the FDIC/Manager and the RTC/Receiver for their alleged failure (and the alleged failure of their predecessors) to refinance or modify these loans pursuant to certain commitment letters.

In 1983, First Federal made loans totalling approximately $30 million to Defendants Pear Ridge II Associates, North Richland Hills Associates, and Jupiter I Associates for the construction of three apartment complexes known as Andrew's Mark, Quinten's Crossing, and Colin's Landing. The loans were secured by a pledge of the apartment projects and the execution of certain guaranties.[2] First Federal funded the Andrew's Mark and Colin's Landing loans with cash received from the sale of bonds issued by the Texas Housing Agency, and funded the Quinten's Crossing loan with cash received from the sale of bonds issued by the Tarrant County Housing Finance Corporation.

By November 1987, Borrowers defaulted on the required monthly loan payments, thereafter paying only the net operating income from the projects to First Federal. Beginning in June, 1988, First Federal and Borrowers began negotiations to work out the defaults through refinancing the bonds at a lower rate of interest and modifying the note interest rates accordingly. Although the Quinten's Crossing bond documents prevented refinancing the bonds, the parties did agree to reduce the interest rate on the Quinten's Crossing loan.

---

1. Although the Court normally allows the party with the burden on a particular matter to open and close the briefing, *see Dondi Properties Corp. v. Commerce Savings and Loan Ass'n,* 121 F.R.D. 284, 291 (N.D.Tex.1988), the Local Rules of the Northern District of Texas require that permission to file a reply brief must be sought "immediately upon receipt of the response to the motion." Local Rule 5.1(f). Accordingly, Defendants' Motion to File Reply, filed February 1, 1991, is DENIED.

2. First Federal loaned Pear Ridge II Associates $7,900,000 for the construction of the Andrew's Mark apartment complex. As part of the Andrew's Mark loan transaction, Pear Ridge executed two separate promissory notes, two separate deeds of trust and security agreements, and an assignment of leases. In addition, Harlan R. Crow executed a personal guaranty.

First Federal loaned Tarrant County I Partners, Ltd. (now North Richland Hills Associates) $8,050,000 for the construction of the Quinten's Crossing apartment complex. As part of this loan transaction, North Richland Hills Associates executed two promissory notes, two deeds of trust and security agreements, and an assignment of leases. Trammell S. Crow, Terrence C. Golden, and Charles M. Holbrook executed personal guaranties. The three personal guarantors were later released from their liability when Quinten's Crossing Joint Venture bought Quinten's Crossing and Trammell Crow executed a new personal guaranty.

First Federal loaned $12,500,000 to Dallas Jupiter Road Associates for the Construction of the Colin's Landing apartment complex. Subsequently, Jupiter I Associates assumed the obligations under this loan and the principal amount was increased to $13,400,000. Jupiter executed two amended promissory notes, two amended deeds of trust and security agreements, and an amended assignment of leases. Trammell S. Crow, Terrence C. Golden, and Charles M. Holbrook executed personal guaranties. Golden was later released from his guaranty.

On June 16, 1988, First Federal sent the Borrowers three letters setting forth proposals to modify the loans. On June 28, 1988, First Federal sent three somewhat different letters concerning the modifications of the loans. The Borrowers, now Defendants, argue that these were commitment letters and that they constitute a contract by First Federal (and its successors) to restructure the loans; according to Defendants, the refusal to restructure the loans in accordance with these letters constitutes breach of contract, tortious conduct, and, of course, a defense to liability under the Notes and Guaranties. The RTC/Conservator points out that both sets of letters contain clauses that conditioned the restructuring of the loans "upon satisfaction with the terms of the Refunding Bond issue and related documents." Because of these clauses, says the RTC/Conservator, when the bond rating agency required First Federal to post annually the full principal amount of the bonds in cash—a condition beyond First Federal's capacity—the proposed loan modifications came to naught and First Federal cannot be bound by any of the other terms of the letters.[3] Both sides agree that the loans were not refinanced.

In February 1989, the Federal Home Loan Bank Board determined that First Federal was insolvent and appointed the Federal Savings and Loan Insurance Corporation ("FSLIC") as Conservator. In August, 1989, First Federal was declared insolvent and the RTC was appointed its Receiver. The RTC/Receiver, pursuant to a purchase and assumption agreement, conveyed substantially all of the assets of First Federal—including the notes, guaranties, and deeds of trust involved in this case—to a new institution, First Savings of Arkansas, F.A. The RTC was appointed Conservator of First Savings, and pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989, the FDIC served as Managing Agent for the RTC.

The RTC/Conservator brought this action to foreclose the deeds of trust which secured all the loans, to obtain payment of outstanding principal and interest, and to enforce the guaranties.[4] The Court addressed Defendants' counterclaims and cross-claims in its Memorandum Opinion and Order filed January 14, 1991, in which the RTC Counterdefendants' Motion to Dismiss was granted and the RTC's Motion for Summary Judgment was granted in part. By its present Motion for Summary Judgment the RTC/Conservator seeks to recover on the Notes and Guaranties and an order of sale and foreclosure on the deeds of trust. Defendants Tom Teague and Chasewood Partners–Tarrant County move for judgment on the pleadings or, alternatively, summary judgment on the basis of a purported release from personal liability as to the Quinten's Crossing loan contained in a loan modification document.

## II.  Summary Judgment.

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment or partial judgment as a matter of law. *See* Fed.R.Civ.P. 56. As the Fifth Circuit stated in *Christophersen v. Allied–Signal Corp.*, 902 F.2d 362, 364 (5th Cir. 1990), "[b]efore a court may grant summary judgment, the moving party must demonstrate that it is entitled to judgment as a matter of law because there is no actual dispute as to an essential element of the plaintiff's case." A movant for summary judgment need not support the motion with evidence negating the opponent's case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

---

**3.** In addition, the RTC/Conservator points to the letters' requirement of a written legal opinion that the workouts were valid, binding, and enforceable agreements, and that in light of First Federal's inability to meet the posting requirements such a legal opinion could not be obtained.

**4.** The RTC also moved for appointment of a receiver to take possession of the apartment complexes and collect the rents, but the parties have resolved this issue.

"Summary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir.1986) (reinterpreting Federal Rule of Civil Procedure 56 to enhance judicial economy). The Fifth Circuit has held that the moving party is entitled to summary judgment when the nonmoving party fails to make a sufficient showing of proof, *see id.* at 1195–98, although all evidence must be viewed in the light most favorable to the motion's opponent. *See Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 292 (5th Cir.1990). Summary judgment may be entered against a party if after adequate time for discovery the party fails to establish the existence of an element essential to his or her case and as to which he or she will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. at 324–26, 106 S.Ct. at 2553–54. "Typically, suits on promissory notes provide fit grist for the summary judgment mill." *Federal Deposit Insurance Corp. v. Cardinal Oil Well Servicing Co.*, 837 F.2d 1369, 1371 (5th Cir.1988).

### III. The Motion for Judgment on the Pleadings.

■ Defendants Tom Teague and Chasewood Partners–Tarrant County move for judgment on the pleadings or, alternatively, for summary judgment that they are not personally liable for the Quinten's Crossing debt because of a purported release contained in a loan modification document. Pursuant to Federal Rule of Civil Procedure 12(c), the Court treats this motion as one for summary judgment.

The Court finds that Teague and Chasewood Partners–Tarrant County have failed to meet their summary judgment burden. Specifically, the Court finds that the movants have failed to show that the modification agreement upon which their motion relies ever took effect. Indeed, the summary judgment evidence, including the deposition statements of Teague and Scott Robinson, shows that although the loan modification document may have been signed by the parties, it was materially breached immediately and never took effect.

"In Texas, the general rule is that reciprocal promises in a contract, absent intentions to the contrary, are presumed to be mutually dependant and the breach of one will excuse performance of the other." *Dallas Market Center v. The Swing, Inc.*, 775 S.W.2d 838, 842 (Tex.App.—Dallas 1989, no writ) (citing *Hanks v. GAB Business Services, Inc.*, 626 S.W.2d 564, 568 (Tex.Civ.App.—Amarillo 1981) *rev'd on other grounds*, 644 S.W.2d 707 (Tex.1982)). In the present case, there is no dispute that North Richland Hills Associates, the borrower under the Quinten's Crossing loan, failed to make the full payment of past due principal and interest that was required by the loan modification agreement. Thus, the agreement cannot operate to free Teague and Chasewood Partners–Tarrant County from personal liability on the Quinten's Crossing loan. *See Joseph v. PPG Industries, Inc.*, 674 S.W.2d 862, 867 (Tex.App.—Austin 1984, writ ref'd n.r.e.) (holding that "one who has himself broken a contract cannot recover on it").

Accordingly, Tom Teague and Chasewood Partners–Tarrant County's Motion for Summary Judgment is DENIED.

### IV. The RTC/Conservator's Note and Guaranty Claims.

■ In order to make out a prima facie case on the Notes under Texas law, the RTC/Conservator must establish each Note in question, that the debtors signed the Note, that the RTC/Conservator is the legal holder and owner of the Note, and that a certain balance is due and owing on the Note. *See Federal Savings and Loan Insurance Corp. v. Atkinson–Smith University Park Joint Venture*, 729 F.Supp. 1130, 1132 (N.D.Tex.1989); *Clark v. Dedina*, 658 S.W.2d 293, 295 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd w.o.j.) (citing *Bailey v. Gulfway National Bank of Corpus Christi*, 626 S.W.2d 70, 73 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.)); Tex. Bus. & Com.Code Ann. § 3.307(b). Similarly, to enforce payment under a guaranty,

the RTC/Conservator must establish that the Defendant signed the Guaranty, that the RTC/Conservator is the legal holder and owner of the Guaranty, and that a sum certain is due and owing on the Guaranty. *See Universal Metals and Machinery, Inc. v. Bohart,* 539 S.W.2d 874, 877–78 (Tex. 1976).

■ The summary evidence establishes that the RTC/Conservator has met its burden of proof on the elements of its prima facie case. Defendants contest the RTC/Conservator's prima facie case on the ground that a sum certain due and owing has not been established. Defendants argue that because the Property underlying this dispute has not yet been sold at foreclosure the precise deficiency cannot yet be known. This contention is insufficient to prevent summary judgment. The amount of principal and interest due on each of the Notes has been established without dispute, and the RTC/Conservator's request that judgment be entered subject to appropriate crediting of amounts received at foreclosure sale is appropriate.

Accordingly, the RTC/Conservator has established its prima facie case on the Notes and Guaranties.

### V. Defendants' Defenses to Liability.

#### A. 12 U.S.C. § 1823(e) Applies to This Case.

■ The central claim raised by Defendants in the present dispute is that the June 16 and June 28, 1988 letters constituted binding contracts under Texas law to refinance the loans. The Court does not reach the question of whether the letters in question constitute contracts because Defendants have failed to show that they satisfy the requirements of 12 U.S.C. § 1823(e) and therefore the purported contracts fail to protect Defendants from liability under the Notes and Guaranties.

Congress codified the doctrine established by *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) and its progeny at 12 U.S.C. § 1823, as amended in Title II § 217 of FIRREA. That statute provides:

(e) No agreement which tends to diminish or defeat the interest of the Corporation and any asset acquired by it under this section or section 1821 of this Title, either as security for a loan or by purchase or as a receiver of any insured depository institution, shall be valid against the Corporation unless such agreement

(1) is in writing,

(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset of the depository institution,

(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously from the time of its execution, an official record of the depository institution.

The uncontested summary judgment evidence in this case establishes beyond peradventure that Defendants cannot overcome the obstacle of § 1823(e). The Supreme Court has held that a requirement of § 1823(e) is "that the 'agreement' not merely be in the bank's records at the time of an examination, but also have been executed and become a bank record 'contemporaneously' with the making of the note and have been approved by officially recorded action of the bank's board or loan committee." *Langley v. Federal Deposit Insurance Corp.*, 484 U.S. 86, 92, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987). The parties argue at length about whether an agreement between First Federal and Borrowers existed in the form of the commitment letters, about whether any such agreement was properly executed according to the requirements of § 1823(e), and about whether any agreement was officially approved by First Federal's board. Assuming Defendants are correct in their contentions on these issues, even they admit that the agreement was not executed and did not become a bank record " 'contemporaneously' with the making of the note," *id.*, because according to Defendants the Borrow-

ers executed the agreement on June 28, 1988—some five years after the making of the notes at issue in this case. "The short of the matter is that Congress opted for the certainty of the requirements set forth in § 1823(e). An agreement that meets them prevails even if the FDIC did not know of it; and an agreement that does not meet them fails even if the FDIC knew. It would be rewriting the statute to hold otherwise." *Langley v. Federal Deposit Insurance Corp.*, 484 U.S. at 95, 108 S.Ct. at 403.

The Court discussed Defendants' failure to meet the contemporaneousness requirement of § 1823 in its Memorandum Opinion and Order of January 14, 1991. Defendants now criticize "[t]he Court's rigid adherence to this apparent requirement [as] short-sighted" because "Congress [n]ever intended to require written modifications to a loan which benefit the lender to be executed contemporaneously with the original loan." Defendants' Brief in Response at 16. Defendants cite three cases as authority for their interpretation of congressional intent and their claim that "[t]he Courts have already begun to recognize an exception to the contemporaneous requirement [of § 1823(e) ] for an accord and satisfaction." [5] *Id.* The Court now briefly addresses these cases.

Defendants' primary authority is *Federal Deposit Insurance Corp. v. Manatt*, 922 F.2d 486 (8th Cir.1991). Defendants quote the following passage from *Manatt* in support of their position.

We doubt that Congress intended that section 1823(e)(2)'s contemporaneousness requirement would defeat a valid accord and satisfaction entered into by the bank. Valid accord and satisfaction agreements are never contemporaneously executed with the documents incurring the debt— the idea that they would be so executed is simply contrary to general business practice and to common sense. Surely, Congress did not mean to preclude banks from getting something of value by an accord and satisfaction rather than nothing at all.

*Federal Deposit Insurance Corp. v. Manatt*, 922 F.2d 486, 489 n. 4 (quoted in Defendants' Brief in Response at 17).

The Court first notes that the language of the footnote quoted by Defendants is completely unrelated to and in no way constitutes the Eighth Circuit's holding in *Manatt* or any other case, as Defendants' brief suggests. The *Manatt* court explicitly stated that "we do not reach the contemporaneousness issue," although the court did express "serious misgivings" about the district court's application of that clause. *Id.* at 489. The footnote quoted above expresses Senior Circuit Judge Gibson's position on the § 1823(e) requirement of contemporaneous execution, but that same footnote recognizes the contrary authority of both *Langley v. Federal Deposit Insurance Corp.*, 484 U.S. at 92, 108 S.Ct. at 401–02 (holding that the agreement not merely must be in the bank's records at the time of an examination, but also must have been executed and become a bank record

---

**5.** Defendants' theory rests entirely upon their belief that the letter agreements constitute an accord and satisfaction under Texas law. "[T]he affirmative defense of accord and satisfaction ... rests upon a new contract ... in which the parties agree to the discharge of an existing obligation in a manner otherwise than originally agreed. The tender of the alternate satisfaction is upon the condition that the acceptance will constitute a discharge of the underlying obligation." *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex.1979).

In the present case, the letter agreements can constitute only an executory accord, if any kind of accord at all. *See* Defendants' Brief in Response at 17. Defendants cite *Pacific Employers Insurance Co. v. Brannon*, 242 S.W.2d 185, 189 (Tex.1951), in arguing that if a creditor breaches

an accord, the debtor acquires a right of action for damages—or, presumably in this case, a defense to liability. *Brannon* clearly states, however, that "a mere accord does not necessarily supersede the original claim," and that "the original claim is deemed superseded by the accord, if the latter clearly shows the mere promise of the debtor, as distinguished from the thing promised, to be intended as the 'satisfaction.'" *Id.* at 189, 189–90. Of course, Defendants' purported accord does not meet this fundamental test—absolutely nothing in the letter agreements even vaguely suggests that those agreements themselves were intended by the parties to be the satisfaction.

In any event, none of Defendants' authority regarding the application of § 1823(e) to accord and satisfaction concerns executory accords.

contemporaneously with the making of the note), and the principal Eighth Circuit case following *Langley*, *Federal Deposit Insurance Corp. v. Virginia Crossings Partnership*, 909 F.2d 306, 309 (8th Cir.1990) (holding that "[t]he plain language of § 1823 requires that an agreement ... must be executed by the bank and the obligor contemporaneously with the making of the note").

In short, Defendants' assertion that *Manatt* recognizes "an exception to the contemporaneous requirement" of § 1823(e), Defendants' Brief in Response at 17, simply is wrong. *Manatt* offers absolutely no authority for Defendants' position. The passage from *Manatt* that Defendants present as authority is dicta from a footnote that itself recognizes the contrary and controlling authority of both the United States Supreme Court and the Eighth Circuit.[6]

Defendants' second case in support of their position is *Federal Savings & Loan Insurance Corporation v. Evans*, No. 3–87–0308–D (N.D.Tex. June 10, 1988), 1988 U.S.Dist.LEXIS 17151. In that case, Judge Fitzwater held that the doctrine established by *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and its progeny, "does not preclude proof of an accord and satisfaction or release that are in writing *and otherwise comply with 12 U.S.C. § 1823(e).*" *Id.* at *7 (emphasis added). Obviously, *Evans* supports Defendants' position even less than does *Manatt* because it does not even hint at the existence of an exception to the strict requirements of § 1823(e).

Finally, Defendants refer to *Federal Deposit Insurance Corp. v. Nemecek*, 641 F.Supp. 740, 742 (D.Kan.1986). Although the *Nemecek* court found a defense of accord and satisfaction applicable against the FDIC, it explicitly found that "§ 1823(e) has no application to this case" because the FDIC had not acquired the disputed asset from the failed bank. *Id.* at 743. In other words, *Nemecek* is utterly irrelevant to the present case.[7]

For these reasons, the Court finds that the letters of June 16 and June 28, 1988 fail to satisfy the requirements of 12 U.S.C. § 1823(e) and therefore are not valid against the RTC/Conservator. The letters

---

**6.** Beyond the obvious fact that Eighth Circuit dicta is not binding on a court in the Fifth Circuit, the Court notes that Circuit Judge Gibson directly addressed the federal policy concerns raised by applying the contemporaneous requirement of § 1823(e) to accord and satisfaction.

> [A]ccord and satisfaction [may be] inapplicable when the FDIC purchases a bank's assets, since the parties can never reach an accord and satisfaction that compromises a debt at the same time they create an original debt obligation. By enacting section 1823(e), Congress was addressing the particular problem posed by the FDIC purchasing assets of a failed bank and agreements that might be used to diminish or defeat the interest of the FDIC in the assets. While an accord and satisfaction in which a bank accepted assets worth $136,000 to extinguish a debt of $387,266 may be of substantial concern to the board of directors and stockholders of a bank with continuing vitality, when the bank fails and must be taken over by the government as insurer of the bank's depositors, public concerns then arise. I believe that the district court correctly applied the statute, and I would affirm the holding on this basis. The wisdom of an Act of Congress is an issue we do not consider.

*Federal Deposit Insurance Corp. v. Manatt*, 922 F.2d at 490 (Gibson, J., specially concurring) (footnote omitted). Indeed, Judge Gibson noted that the inapplicability of accord and satisfaction under § 1823(e) is particularly important where the debtor "fails to fully satisfy the terms of the accord," does not retrieve the notes from the bank, and the bank does not mark the notes "paid." *Id.* n. 5.

**7.** Interestingly, however, the *Nemecek* court reviewed Fifth Circuit authority on the applicability of § 1823(e) to accord and satisfaction. *See Federal Deposit Insurance Corp. v. Nemecek*, 641 F.Supp. at 743. The Fifth Circuit case discussed in *Nemecek* was *Federal Deposit Insurance Corp. v. Hoover–Morris Enterprises*, 642 F.2d 785 (5th Cir. Unit B Apr. 1981). In *Hoover–Morris* the Fifth Circuit stated that "[t]he language of the statute [§ 1823(e) ] is all encompassing; any agreement is subject to the statute if it tends to defeat or diminish FDIC's rights in an asset purchased under authority of § 1823." *Id.* at 787. The *Hoover–Morris* court held that the defendants failed to defeat the FDIC's claim under the note at issue both because the accord had not been executed pursuant to state law and because they failed to meet the requirements of § 1823(e). *See id.* at 788.

in no way protect Defendants from liability under the Notes and Guaranties.

■ The Court also finds without merit Defendants' additional argument that the letter agreements are not subject to the requirements of § 1823 because they do not tend to defeat or diminish the rights of the RTC/Conservator in the Notes and Guaranties. *See* Defendants' Brief in Response at Section IV.C.3. Even assuming that the Defendants' purported executory accord is an accord and satisfaction, it clearly would operate to diminish the RTC/Conservator's interest in the Notes and Guaranties because it provides for lower interest rates on the loans at issue in this case. Although such an arrangement might have been acceptable to First Federal as an ongoing enterprise, once First Federal was declared insolvent and the government took it over the alleged accord could only operate to reduce the optimum value of the Notes and Guaranties. *See Federal Deposit Insurance Corp. v. Manatt,* 922 F.2d at 490 (Gibson, J., specially concurring) (footnote omitted). To grasp this simple point Defendants need only acknowledge the existence of the present dispute: if the RTC/Conservator's interests were in no way diminished by the alleged accord and satisfaction it would not dispute the legal effect of the agreement letters, if only to save transaction costs.

### B. The RTC/Conservator is a Holder in Due Course.

■ The case law under *D'Oench* has extended holder in due course status to federal banking regulators in purchase and assumptions situations. *See Federal Savings and Loan Insurance Corp. v. Murray,* 853 F.2d 1251, 1256 (5th Cir.1988). The federal holder in due course doctrine bars the maker of a promissory note from asserting personal defenses against the FDIC in connection with purchase and assumption transactions with insolvent financial institutions. This protection extends to subsequent holders of the promissory note.

*See Campbell Leasing, Inc. v. Federal Deposit Insurance Corp.,* 901 F.2d 1244, 1249 (5th Cir.1990).

"In addition, the FDIC and subsequent note holders enjoy holder in due course status whether or not they satisfy the technical requirements of state law.... This rule 'promotes the necessary uniformity of law in this area while it counters individual state laws that would frustrate [basic FDIC objectives].' " *Id.* (quoting *Federal Savings and Loan Insurance Corporation v. Murray,* 853 F.2d at 1256).

Defendants admit that the RTC/Conservator enjoys holder in due course status pursuant to federal law. *See* Defendants' Brief in Response at 23. Defendants argue, however, that "[e]ven as a holder in due course, the RTC is still subject to any discharge of which the holder has notice when he takes the instrument." *Id.* In this regard, Defendants contend that the RTC's notice of the letter agreements when it took over First Federal operates to defeat the RTC/Conservator's holder in due course status. Such a conclusion, however, requires that the letter agreements be valid against the RTC/Conservator. The Court has already held that the letter agreements are not valid against the RTC/Conservator pursuant to 12 U.S.C. § 1823(e). Accordingly, Defendants' claims and defenses of waiver, estoppel and discharge are precluded by the federal holder in due course doctrine.[8]

Accordingly, because the RTC/Conservator has established its rights under the Notes and Guaranties and the Defendants' defenses to liability all fail, the RTC/Conservator is entitled to judgment as a matter of law.

### VI. Conclusion.

For the reasons stated above, Tom Teague and Chasewood Partners–Tarrant County's Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment is DENIED. The RTC/Conservator's

---

**8.** Defendants' argument that because the defenses of waiver, estoppel, and laches arise in part from the conduct of the FDIC and RTC they are not barred by the RTC/Conservator's holder in due course status is without merit for the simple reason that any such theory requires that the agreement letters be valid against the RTC/Conservator.

Motion for Summary Judgment is GRANTED. The RTC/Conservator shall submit a proposed judgment by one week from the date of this Order.

SO ORDERED.

### ON MOTION FOR NEW TRIAL

Before the Court is Defendants Trammell S. Crow and Charles M. Holbrook's Motion for New Trial, filed February 25, 1991.

By the present motion, Defendants complain of the Court's Memorandum Opinion and Order entered January 10, 1991 dismissing Defendants' claims and defenses in this case; its Memorandum Opinion and Order entered February 4, 1991 granting summary judgment for Plaintiffs; and its Judgment entered February 14, 1991.

The Court has carefully reviewed the motion and brief submitted by Defendants, as well as their earlier briefs on these issues and the Court's previous Memorandum Opinions. Defendants present no authority or arguments the Court has not already considered and rejected. The Court finds that the present motion should be, and it hereby is, DENIED.

Although Defendants' counsel properly should press arguments they sincerely believe to be meritorious, the Court is astounded that Defendants' counsel continue to cite as authority dicta from a footnote in *Federal Deposit Insurance Corp. v. Manatt,* 922 F.2d 486 (8th Cir.1991). The *Manatt* dicta obviously does not express the law of the Fifth Circuit. Neither does it express the law of the Eighth Circuit or any other jurisdiction in this nation. *See Langley v. Federal Deposit Insurance Corp.,* 484 U.S. 86, 92, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987); *Federal Deposit Insurance Corp. v. Virginia Crossings Partnership,* 909 F.2d 306, 309 (8th Cir. 1990). Nonetheless, citing nothing more authoritative than *Manatt* and without discussing the Court's previous analysis of the issue, Defendants emphatically state that the Court erred and that "the 'contemporaneous' requirement of section 1823(e) does *not* require that written agreements which are otherwise properly executed by the par-

ties, approved by the board of directors and continuously apart [sic] of the bank's records must be executed *at the same time* as the promissory notes being sued upon." Defendant's Br. at 6.

Defendants Trammell S. Crow and Charles M. Holbrook's Motion for New Trial is DENIED.

SO ORDERED.