John A. BLACKMAN, Jr.; Gene K. Bates; William T. Brooks; Kirby K. Bryant, Jr.; Douglas C. Hall; John F. Hensleigh; Mitchell Martin; W. Rodney Ott; John O. Waits; C. Eugene Brown; R.P. Midgett; Hollis N. Gieger; Plaintiffs-Counter-Defendants-Appellants,

John Facinoli; Robert W. Lowe; Lenwood E. Dennis; Paul P. Salter, III, Plaintiffs,

v.

UNITED CAPITAL INVESTMENTS, INC., an Alabama Corporation; United Capital Securities, Inc., an Alabama Corporation; United Capital Corporation, an Alabama Corporation; John M. Andrews; Mary Jess-Ryan; Vincent C. Haydock; Thomas W. Moon; Bern, Bern, Butler, Capilouto & Massey, an Alabama Partnership; Guaranty Federal Savings & Loan Association; Defendants,

Resolution Trust Corporation, as Conservator for Guaranty Federal Savings & Loan Assn., Defendant-Counter-Claimant, Appellee,

Traweek Dickson; United Capital Properties, Inc., an Alabama Corporation; Mark Dauber, Defendants,

Charles L. Denaburg, Movant.

No. 91–7817.

United States Court of Appeals, Eleventh Circuit.

Jan. 28, 1994.

John C. Coggin, III, Lisa F. Grumbles, Coggin & Duke, Birmingham, AL, for appellants.

Robert M. Girardeau, Huie, Fernambucq & Stewart, Birmingham, AL, for Bern, Bern, Butler, Capilouto & Massey.

Charles R. Johanson, III, Engel, Hairston & Johanson, P.C., Birmingham, AL, for Resolution Trust Corp.

Before HATCHETT and COX, Circuit Judges, and RONEY, Senior Circuit Judge.

## PER CURIAM:

A group of limited partners in a now defunct partnership appeal summary judgment rendered in favor of the Resolution Trust Corporation ("RTC"). The district court held that the limited partners' defenses to the enforcement of certain promissory notes were barred and as a consequence RTC was entitled to recover on those notes. We conclude that 12 U.S.C. § 1823(e) does bar the limited partners' defenses. Accordingly, we affirm the district court's grant of summary judgment in favor of RTC.

## I. BACKGROUND [1]

This case involves a limited partnership gone bad. Tiffany Park Associates, Ltd., an Alabama limited partnership (the "Partnership"), was formed in 1983 for the purpose of acquiring a ninety-six unit apartment complex (the "Property"). In order to finance that endeavor, an offering was made. The Partnership offering provided for the sale of thirty limited partnership units at $45,952.37 per unit. Limited partners purchased partnership units for $2,833.33 in cash at the time of subscription, with the remainder to be paid per promissory notes ("Partner Notes").

A "Private Placement Memorandum" ("PPM") was used to sell the partnership units. The PPM contained investment information, including a review of the financial forecast of the Partnership as well as statements relative to the financial condition of the general partner.

The Partnership acquired loan financing for the Property from Guaranty Federal Savings & Loan Association ("Guaranty Federal"). The Partnership assigned the Partner Notes to Guaranty Federal in order to secure such financing. Thereafter, the Partnership purchased the Property and began leasing the ninety-six units. Occupancy rates were low and by November of 1986, the Partner-

ship had filed a Voluntary Petition for Reorganization under Chapter 11.

In November of 1987, the limited partners were advised to make all future payments on the Partner Notes directly to Guaranty Federal. In December of 1987, Guaranty Federal advised the Partnership that it was in default and foreclosed on the Property.

A group of the limited partners (the "limited partners") filed a complaint against several defendants involved in organizing, managing, and financing the Partnership. Guaranty Federal, the entity that provided financing for the Partnership, was named as a defendant. Guaranty Federal became insolvent and RTC was named as its conservator. RTC was joined as a defendant in its capacity as conservator and service on Guaranty Federal was quashed.

Ultimately, RTC became the Receiver of Guaranty Federal. As such, RTC sold the assets of Guaranty Federal to SouthTrust Federal Savings Bank ("SouthTrust") with a "put back" option. That is, SouthTrust had the option of purchasing only those assets of the highest banking quality. SouthTrust elected to "put back" the Partnership's obligation ("obligation")—the Partner Notes. RTC as Receiver sold to RTC as corporate insurer all of the right, title and interest to the obligation formerly held by Guaranty Federal.

RTC filed a counterclaim against the limited partners to collect on the Partner Notes. The limited partners defended by asserting the defense of fraud in the inducement, alleging that the PPM contained misrepresentations regarding the financial status of the Partnership. RTC moved for summary judgment, arguing that it was shielded from the limited partners' defense of fraud as RTC was a "holder in due course" under Alabama law, federal common law, and federal statute. The district court granted RTC's motion for summary judgment.[2] This appeal flows therefrom.

1. The relevant facts are not in dispute.

2. The basis upon which summary judgment was granted is unclear. In its Memorandum Opinion of August 22, 1991, the district court concluded that appellants' defense as to the Partner Notes

was barred by the *D'Oench* doctrine and that RTC was therefore entitled to recover on the Partner Notes. In its Addendum To Memorandum Opinion of September 18, 1991, however,

## II.  ISSUE ON APPEAL

In this opinion we address the following issue: Whether the district court erred in granting summary judgment predicated upon its finding that the alleged fraud in the inducement could not bar recovery by RTC on the Partner Notes.

## III.  STANDARD OF REVIEW

We review a grant of summary judgment de novo. *Vernon v. Resolution Trust Corp.*, 907 F.2d 1101, 1104 (11th Cir.1990).

## IV.  CONTENTIONS OF THE PARTIES

On appeal, the parties address numerous questions regarding whether under Alabama law, federal common law or federal statute, fraud in the inducement bars recovery by RTC on the Partner Notes. We need not consider all of the questions raised by the parties if we find any ground in the record that supports the district court's grant of summary judgment. *See Young v. Comm'r Internal Revenue*, 926 F.2d 1083, 1090 (11th Cir.1991). We limit our discussion to whether 12 U.S.C. § 1823(e) shields RTC from the limited partners' fraud defense.

The limited partners argue that RTC cannot avoid a defense of fraud in the inducement by application of 12 U.S.C. § 1823(e) as that section does not apply. First, the limited partners argue that § 1823(e) does not apply in the instant case as no "agreement" exists within the meaning of § 1823(e). Second, they opine that even if § 1823(e) applies, the exception to that section is triggered by virtue of substantial references in the records of Guaranty Federal to the representations that constitute the alleged fraud. Section 1823(e) does not bar. agreements expressly included in the documents approved by the lending institution. Finally, the limited partners contend that the Partner Notes were void as they were acquired in derogation of federal securities law.

RTC argues that fraud in the inducement would merely render the Partner Notes void-

able, not void.  In addition, RTC contends that an agreement existed such that § 1823(e) would apply and that the exception to that section does not apply.  Hence, RTC argues that the district court properly found that RTC was shielded from the limited partners' fraud defense by application of § 1823(e).

## V.  DISCUSSION

RTC asserts that the limited partners' fraud defense is rendered ineffective by 12 U.S.C. § 1823(e).[3]  Section 1823(e) provides:

> No agreement which tends to diminish or defeat the interest of the Corporation [RTC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—(1) is in writing, (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e) (1989).

**A.  Does the alleged fraud constitute an agreement within the meaning of § 1823(e)?**

The limited partners advance two specious arguments.  First, they contend that in order for § 1823(e) to apply, the "agreement" in question must be one made between the debtor and the bank itself.  Any agreement, however, is subject to § 1823(e) if it tends to defeat or diminish RTC's rights in an asset purchased under authority of § 1823.  *See Fed. Deposit Ins. Corp. v. Hoover–Morris Enter.*, 642 F.2d 785, 787 (5th

---

the district court suggested that reliance on the *D'Oench* doctrine was unnecessary.

**3.**  Section 1823(e) is made applicable to RTC by virtue of 12 U.S.C. § 1441a(b)(4)(A) (West Supp. 1993).

Cir. Apr. 15, 1981) (holding that § 1823(e) applies to all side agreements, including those between an obligor and a third party).[4] Second, the limited partners assert that there was simply no agreement. We conclude there was an agreement.

In *Langley v. Fed. Deposit Ins. Corp.*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the Langleys alleged that they had been fraudulently induced to execute certain promissory notes and the notes were, therefore, unenforceable. The Supreme Court held that "one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead the banking authorities ..." and has therefore entered an agreement within the meaning of § 1823(e). at 92, 108 S.Ct. at 402. The instant case falls squarely within that rule. The limited partners executed facially unqualified notes. Now, they argue that payment on the notes was conditioned upon the truthfulness of representations in the PPM and loan documents—subject to the asserted defense of fraud in the inducement. Such a position runs afoul of *Langley*. Accordingly, we find an agreement under § 1823(e) such that the limited partners' fraud defense is barred by operation of that section.

**B. Do the alleged fraudulent misrepresentations fall within the exception to § 1823(e)?**

The limited partners argue that even if the alleged fraud constitutes an agreement, such an agreement falls within the exception to § 1823(e) as the "agreement" was expressly included in the documents as approved by Guaranty Federal. We disagree.

We find no written agreement whereby the limited partners' duty to pay on the Partner Notes was conditioned on the truthfulness of the PPM or statements contained in the loan documents. To the contrary, the written agreements were unqualified. Thus, the limited partners seek to avoid enforcement of the Partner Notes based upon a secret condition to their obligation to pay. Such a position runs directly counter to § 1823(e). *See Langley v. Fed. Deposit Ins. Corp.*, 484 U.S. at 91–92, 108 S.Ct. at 401. The limited partners' contention that the alleged fraudulent misrepresentations fall within the exception to § 1823(e) is without merit.

**C. Does the alleged fraud render the Partner Notes void and therefore unenforceable?**

The limited partners argue that they were fraudulently induced to execute the Partner Notes and as a consequence the notes are void and, therefore, unenforceable. RTC argues this is a question of federal law. We need not allow RTC's contention to detain us. Fraud in the inducement renders a note voidable but not void under both state and federal law. *Langley v. Fed. Deposit Ins. Corp.*, 484 U.S. at 94, 108 S.Ct. at 402; *Gulf Oil Corp. v. Spriggs Enter., Inc.*, 388 So.2d 518, 521 (Ala.1980). The Partnership therefore had and could transfer to Guaranty Federal voidable title. *Id.* Thus, fraud in the inducement is not relevant to the application of § 1823(e). *Id.*[5]

## VI. CONCLUSION

For the foregoing reasons we AFFIRM the district court's grant of summary judgment in favor of RTC.

AFFIRMED.

---

**4.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**5.** Appellants also make much of the fact that RTC acquired the Partner Notes with knowledge of the asserted fraud. Such knowledge is not relevant to whether § 1823(e) applies. *Langley*, 484

U.S. at 94, 108 S.Ct. at 403. Rather, the query is whether there was a written agreement that meets the requirements of the exception to § 1823(e). "An agreement that meets them [the requirements] prevails even if the FDIC [RTC] did not know of it; and an agreement that does not meet them fails even if the FDIC [RTC] knew." *Id.*